DUAME, Administratrix, etc., Appellant, vs. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY, Respondent.

*October 11 — November 8, 1888.*

*Railroads: Collision at highway crossing: Duty to look and listen: Duty to give warning, etc.: Gross negligence: Court and jury.*

1. The rule that a person approaching a railroad crossing is bound to look and listen for the approach of a train before attempting to cross the track, is not applicable to a case where the train has just passed the crossing while a person driving upon a trot was within a few rods of it, and has passed on in such a manner as to induce the belief that it is to continue on in that direction, and where he has no reason to suppose that it will immediately return.

2. If in such case the train is to be immediately backed down over the crossing again, it is the duty of the railroad company to have some one in a position to prevent persons from attempting to pass over the crossing in the mean time, or to signal the train to stop if there is danger of a collision; and the train should not be backed over the crossing without previous caution or signal given.

3. The question whether a collision between a railroad train and a carriage at a highway crossing, resulting in the death of the driver of the carriage, was caused by the gross negligence, recklessness, and criminal misconduct of those in charge of the train, is especially a question for the jury, unless the evidence is perfectly conclusive and overwhelming.

APPEAL from the Circuit Court for *Oconto* County.

Action to recover damages for the death of the plaintiff's intestate, alleged to have been caused by the negligence of the defendant's employees. The facts are sufficiently stated in the opinion. At the close of the testimony the trial court directed the jury to find for the defendant. From the judgment entered on the verdict so found the plaintiff appeals.

*E. H. Ellis,* for the appellant, argued, among other things, that the deceased had a right to regulate his conduct by the presumption that the employees of the company would act with reasonable caution and not with culpable negligence. *Newson v. N. Y. C. R. Co.* 29 N. Y. 383, 390; *Owen v. H. R. R. Co.* 35 id. 518; *Loucks v. C., M. & St. P. R. Co.* 31 Minn. 526; *Penn. R. Co. v. Ogier,* 35 Pa. St. 60, 72; *Ernst v. H. R. R. Co.* 35 N. Y. 28, 34–6; *Eaton v. Erie R. Co.* 51 id. 551; *Langhoff v. M. & P. du C. R. Co.* 19 Wis. 498; *Hart v. Erie R. Co.* 3 Alb. L. J. 312; 1 Addison on Torts (Wood's notes), 582–83; Brightley's Dig. 2704, sec. 209; *Donohue v. St. L., I. M. & S. R. Co.* 91 Mo. 357; *Hart v. C., R. I. & P. R. Co.* 56 Iowa, 166; *Staal v. G. R. & I. R. Co.* 57 Mich. 239; 2 Thomp. on Neg. 1172, sec. 13; *Kellogg v. C. & N. W. R. Co.* 26 Wis. 223. The deceased also had the right to rely on his *belief.* He believed, from seeing the conductor at the side door of the caboose as it passed; from seeing no look-out on the last car; from seeing no flagman on the street; from the fact that the train passed from his sight; and from hearing no warning of any kind — that he was at liberty to pass and that he could safely do so. *Curtis v. D. & M. R. Co.* 27 Wis. 159, 168; *Beisiegel v. N. Y. C. R. Co.* 34 N. Y. 622, 633; *Penn. R. Co. v. Ogier,* 35 Pa. St. 72. He was not negligent if he did not stop to look and listen before attempting to cross the track. *Ernst v. H. R. R. Co.* 35 N. Y. 37–41; 32 How. Pr.

61; *Duffy v. C. & N. W. R. Co.* 32 Wis. 274–5; *Penn. R. Co. v. Weber*, 76 Pa. St. 157; *Mackay v. N. Y. C. R. Co.* 35 N. Y. 79–81; *Davis v. N. Y. C. & H. R. R. Co.* 47 id. 402–4; *Gugenheim v. L. S. & M. S. R. Co.* 57 Mich. 488. If it could be said that he was bound to look and listen, the presumption is that he did so. *Schum v. Penn. R. Co.* 107 Pa. St. 8, 13; *Cleveland & P. R. Co. v. Rowan*, 66 id. 399; *Lehigh Valley R. Co. v. Hall*, 61 id. 361. If his vigilance was allayed by the negligence of the defendant's servants, the defendant cannot impute the consequences of their acts to his want of vigilance. *Wabash, St. L. & P. R. Co. v. Central Trust Co.* 23 Fed. Rep. 738, 741; 2 Thomp. on Neg. 1173, sec. 19.

The company was bound to establish at the crossing such guards, consistent with the general duties of the company, as would prevent collisions there, and to take every reasonable precaution against injuring travelers on the street. Wharton on Neg. secs. 798, 799; *Ill. Cent. R. Co. v. Baches*, 55 Ill. 379; *Butler v. M. & St. P. R. Co.* 28 Wis. 497–9; *Chicago, B. & Q. R. Co. v. Payne*, 59 Ill. 534, 541; *Penn. R. Co. v. Matthews*, 36 N. J. Law, 533–4; *Bradley v. B. & M. R. Co.* 2 Cush. 539; *Linfield v. O. C. R. Co.* 10 id. 562; *Frankford & B. Turnp. Co. v. P. & T. R. Co.* 54 Pa. St. 345; *Penn. R. Co. v. Ackerman*, 74 id. 268–9; 1 Thomp. on Neg. 423; *Shaber v. St. P., M. & M. R. Co.* 28 Minn. 103; *Louisville & N. R. Co. v. Comm.* 13 Bush, 388; *Penn. R. Co. v. Coon*, 111 Pa. St. 430; *Purinton v. M. C. R. Co.* 58 Me. 569; *Houghkirk v. President, etc.*, 92 N. Y. 227; *Fero v. B. & S. L. R. Co.* 22 id. 213.

For the respondent there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas*, of counsel, and oral argument by *F. C. Winkler*. They contended, *inter alia*, that the company was not negligent. *Bohan v. M., L. S. & W. R. Co.* 58 Wis. 30; *Ellis v. G. W. R. Co.* L. R. 9 C. P. 551; *Culhane v. N. Y. C. & H. R. R. Co.* 60 N. Y. 133; *Suther-*

*land* v. *N. Y. C. & H. R. R. Co.* 9 Jones & S. 17; *Bohan v. M., L. S. & W. R. Co.* 61 Wis. 395. The train men had a right to suppose that deceased would not heedlessly drive on the track in front of the train. *Indiana & B. W. R. Co. v. Wheeler*, 17 N. E. Rep. (Ind.), 564; *Starry v. D. & S. W. R. Co.* 51 Iowa, 421. The crossing was not so peculiarly dangerous by reason of obstructions to the view as to require the court to permit the jury to determine the necessity of keeping a flagman there. *Cliff v. M. R. Co.* L. R. 5 Q. B. 258; *Stubley v. L. & N. W. R. Co.* L. R. 1 Exch. 13; *Stapley v. L., B. & S. C. R. Co.* id. 21, 4 Hurl. & C. 93; *Beisiegel v. N. Y. C. R. Co.* 40 N. Y. 9; *Grippen v. N. Y. C. R. Co.* id. 34; *Weber v. N. Y. C. & H. R. R. Co.* 58 id. 451; *McGrath v. N. Y. C. & H. R. R. Co.* 59 id. 468; *Pakalinsky v. N. Y. C. & H. R. R. Co.* 82 id. 424, 427; *Sutherland v. N. Y. C. & H. R. R. Co.* 9 Jones & S. 17; *Schwartz v. H. R. R. Co.* 4 Robt. 347; *Comm. v. B. & W. R. Corp.* 101 Mass. 201; *Penn. R. Co. v. Matthews*, 36 N. J. Law, 531; *State v. P., W. & B. R. Co.* 47 Md. 76; *Philadelphia & R. R. Co. v. Killips*, 88 Pa. St. 405; *Welsch v. H. & St. J. R. Co.* 72 Mo. 451; Pierce on Railroads, 353.

The negligence of the deceased caused or contributed to his death. *Mahlen v. L. S. & M. S. R. Co.* 49 Mich. 587–9; *Kwiotkowski v. C. & G. T. R. Co.* 38 N. W. Rep. (Mich.), 463; *Woodard v. N. Y., L. E. & W. R. Co.* 106 N. Y. 369, 374; *Bloomfield v. B. & W. R. Co.* 38 N. W. Rep. (Iowa), 431; *Mitchell v. N. Y. C. & H. R. R. Co.* 2 Hun, 535; *Williams v. C., M. & St. P. R. Co.* 64 Wis. 1. A much greater care than the deceased exercised in this case has, under similar circumstances, been required. *Seefeld v. C., M. & St. P. R. Co.* 70 Wis. 216; *Merkle v. N. Y., L. E. & W. R. Co.* 49 N. J. Law, 473; *Durbin v. Oregon R. & Nav. Co.* 17 Pac. Rep. (Oreg.), 5. One approaching a crossing who may, by looking, have a timely view of an approaching train, is bound absolutely to look and listen for its approach before

attempting to cross the track, and a failure to do so is negligence. *Hamilton v. D., L. & W. R. Co.* 13 Atl. Rep. (N. J.), 29; *Schilling v. C., M. & St. P. R. Co.* 71 Wis. 255; *Powell v. M. P. R. Co.* 76 Mo. 80; *Tully v. F. R. Co.* 134 Mass. 499; *Rothe v. M. & St. P. R. Co.* 21 Wis. 256; *Langhoff v. M. & P. du C. R. Co.* 23 id. 43; *Delaney v. M. & St. P. R. Co.* 33 id. 67; *Railroad Co. v. Houston*, 95 U. S. 697; *Schofield v. C., M. & St. P. R. Co.* 114 id. 615; *Wilcox v. R., W. & O. R. Co.* 39 N. Y. 358; *Baxter v. T. & B. R. Co.* 41 id. 505; *Gorton v. E. R. Co.* 45 id. 660; *Salter v. U. & B. R. R. Co.* 75 id. 273; *Connelly v. N. Y. C. & H. R. R. Co.* 88 id. 346; *Brown v. M. & St. P. R. Co.* 22 Minn. 165; *Smith v. M. & St. L. R. Co.* 26 id. 419; *Blaker's Ex'x v. N. J. M. R. Co.* 30 N. J. Eq. 240; *St. Louis, A. & T. H. R. Co. v. Manly*, 58 Ill. 300; *Lake Shore & M. S. R. Co. v. Miller*, 25 Mich. 274, 290, 291; *Pzolla v. M. C. R. Co.* 54 id. 273; *Moore v. P. R. Co.* 99 Pa. St. 301; *Grows v. M. C. R. Co.* 67 Me. 100. If the deceased saw the train pass north over the crossing he also saw it stop, and if he thought it would not move south, still it was his duty to wait to see what it was going to do before attempting to cross, and a failure so to do was contributory negligence. *Kennedy v. C. & N. W. R. Co.* 68 Iowa, 559.

ORTON, J. This is a brief, yet substantially correct, statement of the facts: The track of the defendant's railway crosses Main street in the city of Oconto, nearly north and south. Near the south side of the street there are two side-tracks, with switches, and about seventy feet north of the street there is another side-track, with switch running south. There is a pile of wood, fifty feet long and eight or nine feet high, on the east side of the defendant's right of way, extending north from the north side of the street; and the ground for some distance east of the track north of the street is about four feet higher than the track, and there is

a house about forty feet north of the street and a short distance east of the wood-pile.  The train, which consisted of the locomotive, two box cars, and a caboose, had come out on the main track from one of the side-tracks, and run north across the street; and, when it had passed about two or three car-lengths north of the street, it stopped and immediately backed down towards the street.  During this time the engineer and fireman were on the engine, the conductor stood in the door of the caboose on the east side, one brakeman stood upon the north platform of the caboose, and the other brakeman stood near the switch, south of the street.  There was no flag-man at this crossing, and no one on the rear end of the train to give warning to those about to cross the track at that place, and whether the bell was rung was a fact in dispute; witnesses for the defendant testifying that it was, and other witnesses testifying that they did not hear it.  The deceased, in a one-horse vehicle, was driving west on Main street, towards his home about seven miles in the country, and had approached within seven or eight rods of the crossing from the east when the train passed over it and went on north out of his sight, and he continued on a trot towards the crossing, and, as his horse stepped on the track, the rear car of the train was very near it, and whether he attempted to back out or turn around or pass over the evidence is uncertain, but his carriage came in contact with the rear car, and he was thrown under its wheels and killed.  The conductor of the train, from where he stood, in the east door of the caboose, saw the deceased as he was approaching the crossing, and gave no signal or warning to the engineer to stop the train, as he might have done, and took no precaution whatever to avoid the accident; and, when asked on the trial what he did, said that "he did nothing at all; if he hadn't sense enough, *let him go*."  He could have kept watch of the deceased, but did not, and stood there looking over his way-bills, and did

nothing. The brakeman standing near the switch, on the south side of the street, also saw the deceased approaching the crossing, and knew that the train was backing down towards the crossing, and yet gave no signal or warning to the engineer in time to stop the train before it came in contact with the deceased; and the other brakeman, standing on the front platform of the caboose and near the engineer, and who gave the signal to the engineer to stop the train when it was stopped, and whose business it was to look to the other brakeman for signals, was not looking that way all of the time. If the brakeman at the switch gave any signal to stop in time to prevent the collision, he did not see it, because not looking that way at the time, and yet it was his business so to look. The jury rendered a verdict for the defendant by the direction of the court, and of course this is the error complained of on this appeal.

The evidence tending to prove the negligence of the employees of the defendant is very strong, if not conclusive; and we infer, therefore, that the court directed the verdict on the ground of the contributory negligence of the deceased. We are asked by the learned counsel of the appellant to hold, in view of the evidence, that the killing of the deceased was not only the result of the want of proper care on the part of the conductor of the train and of other employees of the defendant, but that it was occasioned by their gross negligence, recklessness, and criminal misconduct; and that, therefore, the question of the contributory negligence of the deceased is not in the case. The conduct of the conductor was certainly very reprehensible, and, in connection with his own explanation of it, evinces a cold-blooded indifference which, I am happy to say, is not common among railway employees. But, without a finding by the jury on such an important question of fact, we would not feel warranted in first passing upon it. The evidence to such end ought to be perfectly conclusive and overwhelm-

ing, and we can scarcely believe that the omission of the conductor to signal the engineer to stop the train until he could be assured of the safety of the deceased, was wilful, or that he apprehended such a collision as the result of it. This is most properly a question for the jury, and not for the court. Inasmuch as the case must again be tried and the questions of negligence be passed upon by a jury, we refrain from expressing an opinion upon them further than to say that the circuit court erred in directing a verdict for the defendant on the ground either that the defendant was not guilty of negligence or that the deceased was; but we shall only consider the last as the probable ground for such direction.

As a general rule, and unaffected by other circumstances, the proposition urged in the brief of the learned counsel of the respondent, that one approaching a railroad crossing who may, by looking, have a timely view of an approaching train, is bound to look and listen for its approach before attempting to cross the track, and that a failure to do so is negligence, may be correct, and the circuit court most probably applied this strict rule to the plaintiff's case. We do not think that such a rule would be applicable to this case. There is a most important fact in this case that materially modifies this strict rule and makes it inapplicable, and that is that this train had just passed this crossing, while the deceased was within a few rods of it and driving upon a trot, and had passed on out of his sight, and he had reason to suppose that it would continue on, it being upon the main track, like any other train upon its regular route, and had no reason to suppose that it would immediately return. The presumption was that it would go on and not return. He was thus thrown off his guard. There was no reason to look or listen in that direction further, for it appeared impossible to him that any train from that direction would or could approach the crossing within so short

a time.   He was entrapped by this unexpected return of
the train, for its sudden return over the crossing without
warning was to him a trap.   We know how it must have
appeared to him, for it would have so appeared to any
ordinary person with the same knowledge of the situation.
Not knowing or supposing, or having any reason to sup-
pose, that the train would immediately return, or that any
train-would come from that direction, he did as any other
reasonable person would have done, and kept straight on
without lessening his speed, as if assured that the way was
clear and that there was no possible danger.   To have
stopped and looked and listened in that direction, under
such circumstances, would have been unreasonable, and the
law requires no such unreasonable thing as a duty or obli-
gation.   When he had come to within a few feet of the
crossing, with no signal to attract his attention, he appeared
to be suddenly conscious that the end of a box car was
creeping down upon him; and what he did or tried to do·
in this sudden emergency and danger is not very clearly
known, or just how he came to his death under the wheels.
Under such circumstances, the law does not require that he
should have acted or be judged according to any strict or
fixed rule.   He was evidently surprised and confused by
the sudden appearance of the train so near him.   I have
said that the train went north out of the sight of the de-
ceased, and there was testimony to this effect, although it is
contended by the counsel of the respondent that the top of
the cars might have been seen by him all the time.   But
this was a question for the jury, when there was conflict of
the evidence.   But it is quite immaterial whether he could
have seen the tops of the cars or not.   He had no occasion
or reason to look that way any longer after the train had
passed on to the north in such a manner as to lead him to
suppose that it would continue on in that direction.   But
enough has been said to show that the circumstances were

such as to make the rule that a person approaching a railroad crossing is bound to look and listen for the approach of the train, inapplicable to the deceased. This would seem to be too obvious to require authority. But the principle involved has been often recognized by the courts.

In *Curtis v. D. & M. R. Co.* 27 Wis. 158, the train, being brought up to the station, came to a stop in such a manner as to *induce the belief* on the part of the passengers waiting on the platform that it had stopped for their reception, and the plaintiff, in attempting to get on, was injured by the sudden starting of the train without signal. It was held "that, if the plaintiff so acted as persons of common sense and ordinary prudence and intelligence usually act in like cases, there was no such negligence on his part as would prevent his recovery in the action." And it was further held that this was an act of negligence on the part of the company; and that "it was the duty of the company, if the passengers were not to enter the cars under these circumstances, to have some one there to warn and prevent them, and of the persons in charge of the train not to start it without previous caution or signal given." The application of that case to this is very clear. The deceased had the right to act as ordinarily sensible persons would be likely to do if this train passed on in such a manner *as to induce the belief* that it was to continue on in that direction, and drive on, as he did, towards the crossing, without further attention to that train; and, to further apply the case, it would seem that the company was negligent in not having some one there to prevent persons from attempting to pass over the crossing in the mean time, if the train was to be almost immediately backed down over the crossing, and the persons in charge of the train should not have so backed the train over the crossing without previous caution or signal given.

In *Bower v. C., M. & St. P. R. Co.* 61 Wis. 457, it was

held " that a person approaching a railroad crossing with a team, and having reason to suppose that a regular passenger train has recently passed from one direction, is not guilty of negligence if he fails to look constantly in that direction." In *Euton v. Erie R. Co.* 51 N. Y. 551, the train was standing with the rear car nearly over the crossing, and the plaintiff attempted to cross with a horse and buggy, and it was suddenly backed upon him. It is said in the opinion: " The plaintiff had a right to expect that some previous warning would be given that the train was about to back, to put him in fault. The measure of precaution which prudence suggests is in due proportion to the probability of danger." If, by the negligence or omission of those in charge of the train, the plaintiff's vigilance was allayed, they are not at liberty to impute the consequence of their acts to his want of vigilance; and if their acts brought him within the boundaries of peril they must answer for the results. *Penn. R. Co. v. Ogier*, 35 Pa. St. 72. If in this case those in charge of the train allayed the vigilance of the deceased by running the train over the crossing and on towards the north in such manner as to cause him to believe that it would continue and not return and immediately run back over the crossing, they are not at liberty to impute the consequence of such act to his want of vigilance, and if such unexpected return brought him into peril they must answer for the result.

It is contended that the train did not return without warning or signal, but that the bell was rung constantly on its return. It is true that many of the defendant's witnesses testified that the bell was so rung, but many of the plaintiff's witnesses testified that they did not hear it, and some of them were so situated that they would have heard it had it been rung. This certainly made a conflict of evidence and a question for the jury. But if the bell was rung on the engine at the other end of the train, if he did not see the train

and did hear the bell he could not have known with any certainty whether it was rung for the going forward or the *return* of the train.. On this appeal we must assume that no warning or signal was given. As said before, it would seem that, under the circumstances, there ought to have been some one on the rear car, or in some position where he could have seen that no one was about to cross the track before it was backed down over the crossing, to give the deceased timely warning, and to signal the train to stop if there was danger of a collision. This may not be important as affecting the question of the defendant's negligence, as its negligence seems to have been established by other facts as well, but it may be important as affecting the question of the negligence of the deceased. It can readily be seen that the peculiar circumstances of this case make the contributory negligence of the deceased a question for the jury, and not for the court to decide as a question of law; nor would it be a question of law to decide that the deceased was not guilty of such negligence, until the jury had passed upon the disputed facts upon which such a decision must depend. The court erred in directing a verdict for the defendant.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.

See note to this case in 40 N. W. Rep. 394.— REP.