## Staunton.

Norfolk & Western Railway Co. v. Davis' Administrator.

September 10, 1908.

Absent, Keith, P.

1. Pleading — *Declaration* — *Negativing Contributory Negligence* — *Disclosure.*—In an action to recover damages for a negligent injury it is not necessary for the plaintiff to negative contributory negligence on his part, but if the facts averred show such contributory negligence on his part, there can be no recovery in the absence of averments which show that, notwithstanding such contributory negligence, the defendant might have avoided the injury by the exercise of ordinary care after it discovered or ought to have discovered the plaintiff's danger.

2. Railroads—*Grade Crossing—Contributory Negligence.*—In an action against a railroad company to recover damages for an injury inflicted on a traveler at a grade crossing of a public highway, the plaintiff is entitled to recover, however negligent he may have been in going upon the crossing in front of a moving train, if after the defendant's servants in charge of the train saw, or ought to have seen, that he was in peril, they failed to exercise ordinary care to avoid injuring him.

3. Instructions—*Immaterial Rulings.*—If the instructions given by the court properly submitted the case to the jury, and upon them there should have been a verdict for the defendant, it is unnecessary to consider whether the court erred in refusing other instructions tendered by the defendant.

4. Railroads—*Grade Crossings—Persons Approaching—Presumption.*—Where one is seen driving towards a grade crossing of a railroad and there is nothing in his conduct to indicate that he is not in the full possession of his faculties, or that his team is not entirely under his control, nor anything to indicate that he intends to cross, or attempt to cross, the railroad track in front of a rapidly-moving train which is in full view, the trainmen have the right to presume that he will stop and not go upon the track. If he proceeds, and

is injured, there can be no recovery in the absence of evidence that, after the trainmen knew or ought to have known of his peril, they did not do all that they could to avoid the injury.

Error to a judgment of the Circuit Court of Wythe county in an action of trespass on the case.   Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*W. B. Kegley* and *R. M. Page,* for the plaintiff in error.

*A. A. Campbell* and *S. W. Williams,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

The declaration in this case contained four counts, to each of which and to the whole declaration there was a demurrer. The court overruled the demurrer, except as to the fourth count, and its action in not sustaining the demurrer to the other three counts is assigned as error.

The first count, omitting the formal parts, after stating that the plaintiff's intestate and the freight train which caused his death were going in the same direction towards Max Meadows, a station on the defendant company's line of road, avers, that "At a point on said railroad in said county between Wytheville depot and Max Meadows depot and about two miles east of Wytheville depot, a public road or highway crosses said railroad, said highway being commonly known as the McAdam road and runs through Wythe county.   Said public highway at said crossing crosses the said railroad track at grade or upon the same level and at an oblique angle to the railroad.   Immediately west of said crossing and about —— yards distant therefrom, there is a deep cut through which said railroad runs, and this cut together with a house, cut off the view of the cross-

ing from the train, until the train got within 693 feet of the crossing.

"And the plaintiff avers that at the time aforesaid, his intestate, J. A. Davis, was traveling along said public highway towards said crossing in his wagon, driving his team of horses and intending to cross said railroad at said crossing on said highway, and was then and there within 200 feet of said crossing, and at the same time the defendant was running its said locomotive engine by steam and hauling said train of cars towards said crossing, and was then and there at a certain distance from said crossing, to-wit: six hundred to three hundred yards therefrom.

"And plaintiff alleges that the defendant then and there owed to his intestate the duty to sharply sound a steam whistle twice at a distance of not less than 300 nor more than 600 yards from said crossing towards which both said freight train and plaintiff's intestate were traveling, and it was also the duty of defendant company to ring a bell of ordinary size upon said locomotive steam engine, or sound said whistle continuously or alternately with said bell after said whistle had been sounded twice as above, until said engine had reached said crossing. But this duty the defendant carelessly and negligently and wrongfully neglected to perform, and at said time and place and by reason of said negligence, plaintiff's intestate was not warned by said signals or otherwise of the approach of said train, and was then and there ignorant of his danger. And plaintiff further avers that said freight train was then and there invisible to plaintiff's intestate as it came on towards said crossing, in time for plaintiff to save himself, by reason of said train being in the cut above described, and also by reason of a house which also impeded plaintiff's intestate's view of said train.

"And by reason of the negligence above set forth in failing to give said signals as above set forth, and being then and there ignorant of his danger, plaintiff's intestate then and there con-

tinued to travel on said highway to said crossing and then and there in said wagon drove upon said crossing and the said freight train or engine thereof then and there ran against said wagon and hurled said intestate from said wagon and against a fence and thereby so hurt and wounded plaintiff's intestate that he then and there died instantly."

The objection made to that count is that, while it states a case of negligence on the part of the defendant company in failing to give the warning required by law, as its locomotive approached the crossing, the facts averred show that the plaintiff's intestate was guilty of contributory negligence.

This, as we understand the count, is true. It states that the highway crossed the railway at grade, and that by reason of a cut and house west of the crossing the view of the train was cut off until it reached a point within six hundred and ninety-three feet of the crossing. The plaintiff then undertakes to state why his decedent, whose duty it was to look out for the train, did not see it in time to avoid the collision, and in doing so avers that the train was "invisible to plaintiff's intestate as it came on towards the crossing, in time for plaintiff to save himself, by reason of said train being in the cut above described, and also by reason of a house which also impeded plaintiff's intestate's view of said train." There is nothing in that averment to show that if the deceased had been looking, as it was his duty to do, he could not have seen the train approaching six hundred and ninety-three feet west of the crossing. On the contrary, the necessary inference from the facts averred is, that he could have done so. It was not necessary for the plaintiff to aver that his decedent was not exercising due care in going upon the railway track; yet if the facts averred in the count show contributory negligence on the part of the plaintiff's decedent there can be no recovery under such count, in the absence of averments which show that, notwithstanding such contributory negligence the defendant, by the exercise of ordinary care after it discerned or ought to have discerned the decedent's danger, might have avoided the injury.

The second and third counts each state a good cause of action, as we construe them. They each aver, in substance, that the plaintiff's decedent reached a position of danger from the moving train when he arrived at and drove upon the crossing. The second count avers that when in this position of danger the decedent could have been seen and his death avoided if the defendant had been keeping a proper lookout, and had exercised ordinary care to prevent the collision, but that it was not keeping such lookout, nor did it exercise such care. The third count avers, that when in this position of danger the defendant did see the decedent's peril and could have avoided the collision if it had exercised ordinary care, but that it failed to exercise such care.

However negligent the decedent may have been in driving upon the crossing in front of a moving train, he was still entitled to recover if, after the defendant saw or ought to have seen that he was in peril it failed to exercise ordinary care to avoid injuring him.

The next assignment of error is to the action of the court in refusing to give certain instructions asked for by the defendant, and in giving certain other instructions. It is unnecessary to consider whether or not the instructions, or any of them, asked for by the defendant, were correct and applicable to the case, as we are of opinion that the instructions given by the court properly submitted the case to the jury, and that upon those instructions there ought to have been a verdict for the defendant.

It is conceded in the brief of counsel for the plaintiff, and if it were not it is clear, that there could be no recovery in the case unless the evidence showed that the defendant could, by the exercise of ordinary care, have prevented the accident after the plaintiff's intestate was discovered in a situation of peril, or by the exercise of ordinary care ought to have discovered it.

The engineman on the defendant's train saw the deceased as he was driving along the highway toward the crossing, some

seventy or eighty feet from it. The fireman saw him when he was some fifty feet from it. The plaintiff's intestate, when seen by the trainmen, was sitting on the running gears of his wagon, driving very slowly along the highway. The train, which consisted of an engine and eleven loaded freight cars, was running at a speed of twenty miles or more an hour, and the bell on the engine was ringing. There was nothing in the conduct of the plaintiff's intestate to indicate that he was not in the full possession of his faculties; that he did not know that the train was rapidly approaching; that his team was not entirely under his control; or anything to indicate that he intended to cross, or attempt to cross, the railroad track in front of the train which was in full view. Under these circumstances, the trainmen had the right to presume that he would stop and not go upon the track.

In the case of *Southern Ry. Co.* v. *Daves, &c., ante* p. 378, 61 S. E., 748, 2 Va. App. 309, decided at the last term of the court, it was held that a railroad company could not be held liable for the failure of its engineer to anticipate that a person, whether infant or adult, approaching a crossing is going to step upon the track immediately in front of a moving engine, unless there is something to suggest to the engineer that such person does not intend to remain in a place of safety until the train has passed.

When the plaintiff's intestate left a place of safety and started upon the crossing, the fireman at once informed the engineman, who could not then see the wagon from his side of the engine, that the plaintiff's intestate was driving upon the crossing. The engineman immediately applied the air brakes, sounded the alarm, and did all that could be done to avoid a collision. There is nothing in the evidence to satisfactorily show, or to show at all, that after the trainmen knew, or ought to have known, of the peril of the plaintiff's intestate, they did not do all that they could do to avoid the accident. It is quite true that the wagon had almost gotten over the crossing when

it was struck, and that if the train had been checked a little earlier there would have been no collision; but that fact, in the absence of evidence that the trainmen failed to exercise ordinary care to avoid the accident after the plaintiff's intestate left a place of safety and started upon the crossing, cannot render the defendant liable.

The judgment must be reversed, the verdict of the jury set aside, and the cause remanded for a new trial to be had not in conflict with the views expressed in this opinion.

*Reversed.*