## Wytheville.

BACKUS V. NORFOLK AND ATLANTIC TERMINAL COMPANY.

June 8, 1911.

1. RAILROADS—*Grade Crossing — Look and Listen — Last Clear Chance—Case at Bar.*—Where the view of a railroad track is unobstructed for a distance of a quarter to a half mile in a given direction, there can be no recovery for a team killed by collision with a train where the owner's servant drove upon the track without looking in that direction to see if he could cross in safety, unless the defendant after knowing of the danger, or after it should have been discovered by the exercise of ordinary diligence, failed to exercise ordinary care to avoid the injury. In the case at bar, the injury could not have been avoided by the exercise of ordinary care after the peril was or should have been discovered.

2. RAILROADS—*Grade Crossing — Persons Approaching — Presumption.*—Trainmen have the right to presume that a person approaching a rapidly moving train, in full view, will stop before going upon the track, when there is nothing in his conduct to indicate that he is not in the full possession of his faculties, that he is not conscious of the approach of the train, and there is nothing to indicate that he intended to attempt to cross.

Error to a judgment of the Circuit Court of Norfolk county in an action of trespass on the case. Judgment for the defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Willcox, Cooke & Willcox,* and *Henry W. Anderson,* for the plaintiff in error.

*Williams & Tunstall,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

This action was brought by the plaintiff in error, Backus, to recover damages for injuries to a pair of mules, wagon and harness, suffered in a collision with one of the defendant's cars at a road crossing in Norfolk county, between Pine Beach and the city of Norfolk. The judgment under review was rendered for the defendant on a demurrer to the evidence.

At the point of collision the defendant's road (a double track) runs through the plaintiff's farm; and on the day of the accident his negro driver was engaged in hauling hay from the west side of the road over the crossing to his barn and stables on the east side. The plaintiff's residence is located about one hundred and eighty yards north of the crossing, access to which is afforded by a boulevard running parallel with the defendant's right of way.

When the driver set out from the barn, he looked toward Pine Beach, and seeing no car approaching, drove to the crossing and upon the track, without looking again in that direction. To quote his own language, " I did not look that way then (after driving on the west track) until my mules got scared. After my mules got scared, I looked up and saw the car."

From the crossing in a northerly direction the view of the track is unobstructed for a distance of a quarter to a half a mile, yet the driver before going on the track wholly failed to look in that direction to find out if he could cross in safety. In these circumstances he was plainly guilty of such negligence as would bar a recovery, unless the defendant, after knowing of the danger, or after it should have been discovered by the use of ordinary diligence, failed to exercise ordinary care to avoid the injury.

When the driver got upon the track, one of his mules scared at a hole in the bridge and stopped and would not go forward.   He then for the first time looked up the track and saw the car seventy-five yards away, approaching at full speed.   He held up his hands as a signal to the motorman to stop, but the collision was at that time inevitable.

We have found nothing, after a careful inspection of the evidence, to bring the case within the influence of the doctrine of discovered peril, or the last clear chance.   The motorman saw the team coming down the boulevard at a walk, and had no reason to suspect that the driver would attempt to cross in front of him with his car in plain view. As soon as the danger was discovered, he shut off the current and put on the emergency brake, but it was impossible then to avert the accident.   The colliding train consisted of a heavy motor car with a trailer attached, the schedule speed of which was from thirty to forty miles an hour.   The undisputed evidence shows that the motorman could not have stopped the cars under four hundred feet

In the case of *Norfolk & Western Ry Co.* v. *Daves,* 108 Va. 514, 518-19, 62 S. E. 337, 339, the court says: "The engineman on the defendant's train saw the deceased as he was driving along the highway toward the crossing, some seventy or eighty feet from it.   The fireman saw him when he was some fifty feet from it.   The plaintiff's intestate, when seen by the trainmen, was sitting on the running gears of his wagon, driving very slowly along the highway. . . . There was nothing in the conduct of the plaintiff's intestate to indicate that he was not in the full possession of his faculties; that he did not know that the train was rapidly approaching; that his team was not entirely under his control; or anything to indicate that he intended to cross, or attempt to cross, the railroad tracks in front of the train which was in full view.   Under these circumstances, the trainmen had a right to presume that he would stop and

not go upon the track." *Southern Railway Company* v. *Daves,* 108 Va. 378, 61 S. E. 748;*Virginia-Carolina Ry. Co.* v. *Clawson's Admr.,* 111 Va. 313, 68 S. E. 1003.

The principles enunciated in these cases and many others are conclusive when applied to the facts of this case, and the judgment must, therefore, be affirmed.

*Affirmed.*