## Wytheville.

### MORTON'S EXECUTOR V. SOUTHERN RAILWAY COMPANY.

#### June 8, 1911.

1. RAILROADS—*Negligence—Grade Crossings—Care Required.*—The degree of care imposed upon a railroad company in keeping a lookout to avoid inflicting injury at a grade crossing of a public highway is such as a prudent person would exercise under the circumstances at the particular time and crossing in endeavoring to perform his duty.

2. RAILROADS—*Personal Injury—Crossing Track—Negligence—Presumption.*—Trainmen have a right to assume that a traveler will, in the discharge of his duty, take reasonable precautions for his own safety; that he will look and listen before undertaking to cross a railroad track, and it is only after it comes to their knowledge (or, when by the exercise of ordinary care upon their part, it should come to their knowledge) that the traveler, disregarding his duty, has placed himself in peril of which he is unconscious, that any duty devolves upon the trainmen to undertake to stop the train.

3. INSTRUCTIONS—*Evidence to Support.*—It is not error to refuse an instruction when there is no evidence in the case to support it.

4. RAILROADS—*Injury to Person on Track—Contributory Negligence.*—In the case at bar, the jury were properly instructed that the plaintiff's testator, in going upon the defendant's tracks in front of the approaching train, was guilty of negligence, and, in the absence of evidence that he could not have gotten off sooner, his negligence continued as long as he remained on the track and until the train collided with him and killed him, and hence, though the engineer also may have been guilty of negligence in not seeing him, or in not sounding the whistle, or in not endeavoring, to stop or reduce the speed of the train, there could be no recovery for his death. (See instructions 3, 6.)

Error to a judgment of the Circuit Court of Campbell county in an action of trespass on the case. Judgment for the defendant. Plaintiff assigns error.

*Affirmed.*

The following instructions were given by the court upon the motion of the defendant:

"(1)  The court instructs the jury that the track of a railway company is of itself a proclamation of danger to a traveler, and that he must not only use his eyes and ears, looking and listening in both directions, but he must, when about to cross a track, look and listen, so as to make these acts reasonably effective.  If such looking and listening does or would warn him of the near approach of a train, then it is his duty to keep off the track until the train has passed, and to go on the track under such circumstances is negligence, and he cannot recover.

"(2)  The court instructs the jury that if they believe from the evidence that the engineer was guilty of negligence in failing to see Dr. Morton, or warn him of the approach of the train, or in failing to endeavor to stop or reduce the speed of the train after the engineer could by the exercise of due care have seen Dr. Morton's danger, and if they further believe from the evidence that Dr. Morton by the exercise of due care on his part would or should have discovered the negligent omission of the engineer in time to have saved himself, the jury must find for the defendant.

"(3)  The court instructs the jury that Dr. Morton, the plaintiff's testator, in going upon the tracks in front of the approaching train, was guilty of negligence, and in the absence of evidence that he could not have gotten off the tracks sooner, his negligence continued as long as he remained on the track, and until the train collided with him.  Therefore, notwithstanding the engineer, also, may have been guilty of negligence in not seeing Dr. Morton, or in not sounding the whistle, or in not endeavoring to stop or reduce the speed of the train, the jury must nevertheless find for the defendant.

"(4)  The court instructs the jury that if they believe from

the evidence that the decedent, Charles S. Morton, could have stepped from the track and avoided collision with the train after the train had reached a point at which no effort on the part of the engineer could have prevented the collision, then the jury must find for the defendant, even though they believe from the evidence that the engineer might, by the previous exercise of due care, have discovered, in time to have prevented the collision, the said Morton's intention to cross the track in front of the train."

"(5) The court instructs the jury that if the engineer failed to see and warn Dr. Morton, and failed to endeavor to stop or reduce the speed of the train when by the exercise of due care he could or should have done so, and that Dr. Morton failed to see the approaching train when by the exercise of due care he could have done so, and prevented the collision, then the jury must find for the defendant.

"(6) The court instructs the jury that if Dr. Morton's death was due to the concurring negligence of himself and the defendant's servants in charge of the train, that is, to the negligence of both parties, Dr. Morton and the company, operating and in effect at the same time, they must find for the defendant.

"(7) The court instructs the jury that the duty of Dr. Morton to look out for his own safety was as great as the duty of the defendant to look out for him, and the court instructs the jury that the negligence of the defendant, if it was negligent, did not excuse Dr. Morton from the reciprocal duties he owed to care for his own safety, and that no negligence of the defendant would entitle the plaintiff to recover, unless it was the sole, proximate cause of the death of Dr. Morton.

The following instructions requested by plaintiff were refused:

"(A) The court instructs the jury that, although they may believe from the evidence that the defendant's engineer

sounded the crossing signal at the proper point as he approached the crossing in question, this would not relieve the defendant of the duty of exercising ordinary care in keeping a reasonable lookout as its engine approached said crossing (should the jury believe from the evidence that it was a public highway crossing) in order to avoid injuring persons traveling thereon, and such a failure on its part to exercise such care in keeping such lookout would be negligence.

"(B) The court instructs the jury that the law imposes upon a railroad company the duty of exercising ordinary care in keeping a reasonable lookout when such engine is approaching a public highway crossing, in order to avoid injury to persons passing across its tracks at such crossing, and a failure to exercise such care constitutes negligence.

"(C) The court instructs the jury that if they believe from the evidence that the plaintiff's testator went dangerously near to or upon the defendant's northbound track under the conditions disclosed by the evidence in this case, thereby placing himself in a position of peril from defendant's engine and train approaching along said track from the south, he was guilty of negligence in so doing, and the plaintiff cannot recover in this action, unless the jury further believe from the evidence that the point at which the plaintiff's testator was crossing said track was a public highway crossing, and that, after he had so placed himself in a position of peril, the defendant's engineer in charge of said approaching engine could and would, by the exercise of ordinary care in keeping a reasonable lookout as the engine approached said crossing, have discovered plaintiff's testator's peril in time to have avoided striking him, and that the said engineer failed to exercise such care, and by reason of such failure ran upon and killed him, in which event the defendant would, notwithstanding the said negligence of plaintiff's testator, be liable for his death."

51

*Lee & Kemp,* for the plaintiff in error.

*Coleman, Easley & Coleman,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

Charles S. Morton's executor brought this action against the Southern Railway Company to recover damages for the death of his testator, caused, it is alleged, by the negligence of the defendant company, and at the trial of the cause there was a verdict and judgment for the defendant company, to which judgment the plaintiff obtained this writ of error.

The deceased was killed on the 28th day of July, 1909, by a freight train at the crossing of defendant in error's track over a public highway at Lawyer's station, in Campbell county, Va., in broad daylight, about six o'clock in the afternoon. While deceased was seventy-seven years of age, according to the testimony of his son, the plaintiff in error, he had led "an extremely active life," and his general health and mind were very good—"in rather splendid condition"—at the time of the accident though "his limbs were very feeble and he moved very slowly in his walking."

The defendant in error, at the point of this accident, maintains a double track which crosses the public highway practically at right angles, the station at Lawyer's being on the right hand side going north. From this highway crossing south the railway track is perfectly straight for at least a mile, so that a person at the crossing could see an approaching train, and could in turn be seen by the engineer in charge of the engine while the engine was traveling that distance. The rumbling of the train could be and was heard before it "came over the hill," more than a mile, and it was not a train scheduled to stop at that station. Deceased had bought a farm some miles from Lawyer's, and on the day of his death rode over to the farm with a man named Withers. He walked from the depot to Withers' house, a distance of

three-fourths of a mile, and Withers drove him in a buggy to the farm and back to the station. Withers, testifying in this case, states that he saw nothing the matter with deceased; that his hearing was "as good as anybody's"; that his eyesight was as good "as anybody's"; "unusually good"; and that "he was all right mentally." When deceased returned to the depot he visited a store on the side of the tracks opposite the station to secure an envelope and paper upon which to write a letter, and with the envelope and paper in his hand came on along the public highway towards the railway tracks in the direction of the station. When he reached the right of way of defendant in error, according to the statement of Marshall Payne, colored, the only eyewitness as to what took place, his figure was bent, his head bowed and his eyes fixed upon the ground, coming slowly and feebly up to and across defendant in error's southbound track and into the space between the southbound and the northbound track. Payne was on the "tow-path" about 110 yards north of the crossing and was going south towards the crossing, the "tow-path" being on the right-hand side (going south) of all the tracks, thus putting the witness out of line with the northbound track upon which the train was running. The witness Payne undertakes to fix the point at which he was and where the train was when he first saw deceased approaching the crossing by certain objects on the side of the railroad track, or freight cars standing on one of the tracks south of the crossing, but, as clearly appears from his statement, he did not consider deceased in any danger until the latter had actually stepped upon the northbound track on which the train that struck him was running. To a question as to when he commenced holloing at deceased, the witness answered: "He had started across the northbound track, just made one step, when I holloed to him to come back before the train come. I holloed to him for him not to go over

there because I saw danger coming." The witness further says: "After he (deceased) aimed to go, to make it across the northbound track, it (the train) was right there at the side of them box cars"; and according to measurements furnished by plaintiff in error, the distance the train was then from the crossing was 105 yards (315 ft.), and traveling at the rate of from thirty to thirty-five miles an hour, and the rumbling of which was distinctly heard by plaintiff in error's witness, Wheeler (66 years old), a mile off—"before it come over the hill"—so that, without entering upon a calculation in figures of the time and the distance made by the train therein, the conclusion is irresistible that had the engineer seen the deceased the instant he stepped on the northbound track, he must have thought, and he had the right to think, that there was ample time for deceased to clear the track before the engine reached the crossing, and that had he seen deceased approaching the track in front of the rapidly approaching train he (the engineer) expected, as he had the right to expect, that deceased would keep off the track until the train passed. The engineer, an experienced employee, testifies that he neither saw the deceased nor knew that he had been struck and killed till the train reached the next station. He was sitting on the right-hand side of the engine, the opposite side from that from which the deceased was approaching the track, and the witness Harvey, for plaintiff in error, says that standing about midway between the northbound and southbound tracks at the crossing (the distance between them being eight feet) he could see an engineer on his seat in an engine coming north from Danville until the engine got about five rails from the crossing, which would be 170 feet, but after getting within the 170 feet the engineer would be obscured from the witness' view, and the witness from the engineer's view, by the boiler and the smokestack of the engine.

There are but two bills of exceptions made a part of the

record—the one to the giving and refusing of instructions and the other to the ruling of the court upon the motion of plaintiff in error to set aside the verdict of the jury and grant a new trial—and these exceptions are relied on here for a reversal of the judgment of the trial court.

The contention of plaintiff in error is, (1) that it was the duty of defendant in error's engineer in charge of its engine to exercise ordinary care in keeping a reasonable lookout as the engine approached the public highway crossing, in order to avoid injury to persons crossing its tracks at such crossing, and that a failure to exercise such care would constitute negligence; (2) that although it should appear from the evidence that the engineer had sounded the crossing signal at the proper point upon approaching the crossing, that fact would not relieve him from the duty of keeping a reasonable lookout as the engine approached the highway crossing; (3) that under the facts of this particular case the doctrine of *last clear chance* might properly have been applied by the jury, and that question should have been submitted to them under proper instructions.

On the other hand, defendant in error contends that the facts of the case bring it solely within the doctrine of *concurring negligence,* and there could be no recovery.

The rule as to the degree of care imposed upon a railroad company in keeping a lookout to avoid inflicting injury at a crossing is stated in 33 Cyc., p. 923, to be "such as a prudent person would exercise under the circumstances at the particular time and crossing in endeavoring to perform his duty"; and the rule so stated has been repeatedly sanctioned by this court, one of its latest expressions being in *Southern Railway Company* v. *Hansbrough,* 107 Va. 733, 60 S. E. 58, cited in Cyc., *supra.* This court has also repeatedly sanctioned the rule, approved by practically all courts, that trainmen have a right to assume that a traveler will, in the discharge of his duty, take reasonable precau-

tions for his own safety; that he will look and listen before undertaking to cross a railroad track; and that it is only after it comes to the knowledge of the trainmen (or when, by the exercise of ordinary diligence upon their part, it should come to their knowledge) that the traveler, disregarding his duty, has placed himself in peril of which he was unconscious, that any duty devolves upon the trainmen to undertake to stop the train; and this rule has been applied even in case of a child eight years of age as well as in the case of an adult. *Southern Ry. Co.* v. *Daves,* 108 Va. 378, 61 S. E. 748. See also *Johnson* v. *C. & O. Ry. Co.,* 91 Va. 171, 21 S. E. 238; *C. & O. Ry. Co.* v. *Hall,* 109 Va. 296, 63 S. E. 1007.

Assuming for argument's sake that the engineer in this case saw, or ought to have seen, plaintiff in error's decedent before or even after he had stepped over the west rail of the track, the rules to which we have just adverted apply, since there was no evidence tending to show that there was something in the appearance of the deceased to suggest to the engineer that he did not intend to remain in a place of safety until the train passed, or would be unable to clear the track after he had stepped over its west rail, before the engine reached the crossing, and to do this the decedent would have had to travel but a distance of less than four and one-half feet. According to plaintiff in error's own evidence, this freight train, traveling thirty or thirty-five miles an hour, was 105 yards south of the crossing when the decedent stepped across the first rail of the track upon which the train was approaching. The distance the train would have made, and the distance the deceased should have traveled in the time it would have taken the engine to reach the crossing warranted the engineer in assuming that there was ample time for deceased to clear the track before being struck by the engine, there being nothing in his appearance to indicate that he was physically unable to do so or was unaware of his peril.

Plaintiff in error's instructions "A," "B" and "C" were properly refused. The latter told the jury that if they believed from the evidence that after decedent had placed himself in a position of peril, the engineer could and would, by the exercise of ordinary care in keeping a reasonable lookout as the engine approached the crossing, have discovered the decedent in peril in time to have avoided striking him, defendant in error would be liable, notwithstanding decedent's negligence. In other words, the instruction sought to have applied to this case the doctrine of the last clear chance, when there was no evidence upon which it could be based, and therefore the doctrine invoked had no application whatever to the case. *N. & W. Ry. Co.* v. *Davis,* 108 Va. 514, 62 S. E. 337; *C. & O. Ry. Co.* v. *Hall, supra; Southern Ry. Co.* v. *Bailey,* 110 Va. 833, 67 S. E. 365, 27 L. R. A. [N. S.] 379.

It may be that if the engineer knew, or could have known by the exercise of reasonable care, that the decedent could not clear the track before the engine struck him, the engineer might have sufficiently reduced the speed of the train so as to have avoided the collision, but there is no evidence whatever to support such a theory.

The seven instructions given by the court fully and fairly submitted the case upon the evidence to the jury, and the objections made thereto are without merit.

The evidence has been sufficiently adverted to, in the statement of the case and in considering the instructions refused at the trial, to clearly show that this court would not be warranted in disturbing the verdict of the jury, approved by the circuit court, and therefore said judgment is affirmed.

*Affirmed.*