## Wytheville

## BOYD V. SOUTHERN RAILWAY CO.

### June 12, 1913.

1. DEMURRER TO EVIDENCE—*Conflicting Evidence—Railroads.*—Where the evidence is conflicting as to whether or not a railroad company was negligent in the operation of a train which inflicted the injury complained of, and there is a demurrer thereto by the company, the negligence of the company must be considered as established.

2. RAILROADS—*Grade Crossing—Negligence of Traveller—Last Clear Chance.*—While it is the duty of a railroad company to give notice of the approach of its train to a crossing, the reciprocal duty is imposed upon a person about to go·on its track to exercise ordinary care and caution, whether it be a highway crossing or a licensed way, and if he fails to look and listen, and attempts to cross the track in front of a moving train and is injured by it, his own negligence so contributes to his injury as to bar recovery, unless the railroad company, after it discovered or ought to have discovered his peril, might have avoided the injury by the exercise of ordinary care.

3. RAILROADS—*Grade Crossing—Spur Tracks—Rights of Owner or Employee on Premises.*—The fact that an employee of a manufacturing company is on the private property of the company, going to his place of business, does not excuse him from looking and listening before going upon a spur track of a railroad rightfully operated through the company's grounds. His rights at such crossing are no higher (if as high) than if it had been a public highway crossing.

4. RAILROADS—*Spur Tracks—Crossings—Travellers—Look and Listen —Negligence.*—A person familiar with the tracks and sidings of a railroad who is injured by being struck by a shifting engine on a spur track is not relieved of the imputation of negligence in failing to look and listen before going upon the track by the fact that he had shortly before that met the engine going in upon the spur track to which there was no other outlet. He must have known that the engine would return as soon as it accomplished its work, for in no other way could it have finished its shifting or returned to the main line.

5. RAILROADS—*Grade Crossing—Negligence of Traveller—Last Clear Chance*—Where a traveller is struck by a railroad engine at a grade crossing as soon as he steps upon the track, it cannot be said that the railroad company had the last clear chance of avoiding the injury. He was not in peril until he started to cross the track, and it was then too late for the engineer to have stopped his train or avoided the injury if he had been on the lookout and had seen the plaintiff's danger.

Error to a judgment of the Corporation Court of the City of Danville in an action of trespass on the case. Judgment for the defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Scott & Buchanan, Harry Wooding, Jr.,* and *B. H. Custer,* for the plaintiff in error.

*William Leigh,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

This is an action to recover damages for personal injuries suffered by the plaintiff in error, caused as is alleged by the negligence of the defendant railway company. Upon the trial of the cause the defendant demurred to the evidence, in which the plaintiff was required to join. The court sustained the demurrer, and rendered judgment in favor of the defendant.

Error is assigned, not only to the judgment of the court in sustaining, but also to its action requiring the plaintiff to join in, the demurrer. This latter assignment of error does not seem to be much relied on, and if it were, we see nothing in the record, nor is anything suggested by the plaintiff's counsel, to show that the court erred in requiring a joinder in the demurrer.

Upon the merits, it appears that the plaintiff received the injuries complained of at a grade crossing over the defendant's spur track leading from its main line into the yard of one of the mills of the Riverside and Dan River Cotton Mills Company, located in or near the city of Danville. The road upon which the plaintiff, who was an employee of the Cotton Mills Company, was travelling was upon the property of that company, and was used by its employees who lived in certain portions of the city in going to and from their work, by wagons and other vehicles, and by all persons who had business at the mill, including children who carried dinner to their parents or other relatives working there.

The contention of the plaintiff is that the defendant was guilty of negligence in the operation of its train at the time the plaintiff was injured. The evidence is conflicting, but upon a demurrer to it the negligence of the defendant must be considered as established, since there was evidence tending to show that the engine, which was running backwards, gave no warning or notice of its approach to the crossing by ringing the bell or otherwise; that none of the train crew were on the lookout for the crossing, although the defendant knew that persons crossed its track at that point at all hours of the day.

The negligence of the defendant having been established, the next question is, did the plaintiff contribute to his own injury, as the defendant contends?

It appears from the plaintiff's own testimony that as he approached and went upon the crossing he neither looked nor listened. There was nothing to obstruct his view in the direction from which the defendant's train came, or to interfere with his hearing. While advanced in years, he was in full enjoyment of all his faculties. Unless, therefore, there be something in this case to take it out of the general rule, it is clear that the plaintiff must be held to have

contributed to his own injury; for no general rule of law is better settled in this jurisdiction and generally, it is believed, than that while it is the duty of a railroad company to give notice of the approach of its train to a crossing, the reciprocal duty is imposed upon a person about to go on its track to exercise ordinary care and caution, whether it be a highway crossing or a licensed way. The track itself is a proclamation of danger. It is his duty before going upon it to use his eyes and ears. If he fails to look and listen, as his duty requires him, and attempts to cross the track in front of a moving train and is injured by it, his own act, his own negligence, so contributes to his injury that he is not entitled to recover, unless the railroad company after it discovered, or ought to have discovered, his peril, might have avoided the injury by the exercise of ordinary care. *Johnson* v. *C. & O. Ry. Co.,* 91 Va. 171, 179, 21 S. E. 238; *Washington, &c., R. Co.* v. *Lacy,* 94 Va. 469, 475-6, 26 S. E. 834; *Southern Ry. Co.* v. *Hansbrough,* 107 Va. 733, 741-2, 60 S. E. 58; *Morton's Ex'or* v. *Southern Ry. Co.,* 112 Va. 398, 405-6, 71 S. E. 561.

One of the grounds relied on to take this case out of the general rule that the failure of the plaintiff to look and listen for the approach of trains before going upon the crossing was *per se* negligence, is that "the plaintiff was not on the (railway) company's property but in the yard and on the private property of the cotton mill company for which he worked, and that he had as much right to be there *en route* to business as the railroad company did, if not more."

The defendant company had acquired a right of way (20 feet in width) through the said property of the Cotton Mills Company, by deed, for the location of its switch, and there were no limitations imposed by the conveyance, except that in the event the defendant abandoned the use of the property for railroad purposes it should revert to the

Cotton Mills Company. Clearly the Cotton Mills Company and its employees had no higher rights (if as high) in passing over that crossing than they would have had if it had been a public highway crossing.

Another ground relied on to take this case out of the general rule that the failure of the plaintiff to look and listen for an approaching train before going upon the crossing was negligence as a matter of law, is that he had been lulled into a sense of security and thrown off his guard by the conduct of the defendant and the circumstances surrounding him when injured.

The plaintiff that day had gone from his work at the Long Mills by permission to attend to some private matters, and was returning to his work between one and two o'clock. After getting off a north Main street car, he was proceeding along River street in the direction of Long Mills, the place of his work, when he passed the train which afterwards injured him. The train consisted of five cars and an engine. The engine was pushing the cars on a spur track which passed by Dan Valley Mills, also property of the Cotton Mills Company. That spur track leads from another spur track of the defendant company some ten or fifteen feet east of the fence which enclosed the yard in which the plaintiff was injured, and terminates fifty or sixty feet east of the Dan Valley Mills. The other spur track, which is known as Cotton Mills Siding No 2, runs out from the defendant's main line a few feet west of where the latter crosses north Main street of the city of Danville and extends into the yard of the Cotton Mills Company, by and beyond the Long Mills. The street or road upon which the plaintiff was travelling when he passed the defendant's train runs between these two spur tracks for a distance, as shown on the map filed with the record and a part thereof, between three hundred and four hundred feet, when it crosses the Dan Valley Mills spur track; thence it

runs between one hundred and one hundred and fifty feet
south of both spur tracks where it enters the cotton mills
enclosure through a gate; thence about one hundred and
seventy feet near to and almost parallel with siding No. 2,
when it crosses it obliquely; and thence by and beyond
Long Mills, where the plaintiff was employed.

The plaintiff's contention is that he was excused from
exercising the same degree of care in looking and listening
before going upon the crossing when injured, because he
had met the train going in an opposite direction, and there
was nothing to suggest to him, or any other reasonable
man, that it would immediately return without notice or
warning of any kind.

There is a class of cases in which it is held that reason-
able belief that no train is approaching a crossing relieves
a traveller who fails to look and listen of the imputation
of negligence as a matter of law.

In the case of *Kimball & Fink* v. *Friend,* 95 Va. 125, 27
S. E. 901, where there was a silent gong, and in *Southern
Ry. Co.* v. *Aldridge,* 101 Va. 142, 43 S. E. 333, where the
watchman failed to perform his duty, it was held that the
question of negligence on the part of the travellers in going
upon the crossing where injured, was a question of fact for
the jury, under all the facts of those cases, and not a
question of law for the court.

It has also been held that the traveller's negligence is a
question for the jury where he attempts to cross a railway
track immediately after one train has passed and another
follows so quickly as to mislead or confuse him and he is
injured. And in cases of flying switches, where the train
has been severed and the traveller goes upon the crossing
after the first section has passed and is struck by the
second; and also where a traveller sees a train pass on or
towards the main line of the railroad, goes upon the track
and is injured by the train immediately returning. See

cases cited in note to *Scott* v. *St. Louis Ry. Co.,* 9 Am. & Eng. Ann. Cases, 216.

The decision chiefly relied on by the plaintiff's counsel in this case and the one most largely quoted from in his petition and brief, is that of *Duane* v. *Chicago, &c., Ry. Co.,* 72 Wis. 523, 40 N. W. 394, 7 Am. St. Rep. 879. But that is a very different case from the one under consideration. In that case, after stating the general rule as to the duty of a traveller to look and listen before going on a crossing, the court said: "There is a most important fact in this case that materially modifies this strict rule and makes it inapplicable, and that is that this train had just passed this crossing, while the deceased was within a few rods (8) of it and driving upon a trot, and had passed on out of his sight, and he had reason to suppose that it would continue on, it being upon the main track, like any other train upon its regular route, and had no reason to suppose that it would immediately return. The presumption is that it would go on and not return. He was thus thrown off his guard. There was no reason to look or listen in that direction further, for it appeared impossible to him that any train from that direction would or could approach the crossing within so short a time. He was entrapped by this unexpected return of the train, for its sudden return over the crossing without warning was to him a trap. We know how it must have appeared to him; for it would have so appeared to any ordinary person with the same knowledge and, (in the same) situation. Not knowing or supposing or having any reason to suppose that this train would immediately return, or that any train would come from that direction, he did as any other reasonable person would have done and kept straight on without lessening his speed as if assured that the way was clear and there was no possible danger. To have stopped and looked and listened in that direction under the circumstances would have been

2

unreasonable, and the law requires no such unreasonable thing as a duty and obligation."

In this case, when the plaintiff passed the defendant's train, it was not on or going towards the main line. It was on a spur track only five hundred or six hundred feet long, and which terminated fifty or sixty feet beyond Dan Valley Mills, for the convenience and benefit of which that spur track was chiefly used. When the plaintiff passed the train he was at least as far from the crossing where injured as was the train from the end of the spur track. There was no spur track leaving the siding on which the train was running when the plaintiff met it. He therefore knew, if he was giving any attention to his surroundings, that the shifting train, whether going to Dan Valley Mills to place a car or to take out a car, would as soon as it had done that work in all probability—indeed, almost certainly—go back in the direction from which it came and in which he was going, for in no other way could it finish its shifting, if more was to be done, or go back on the main line from which it came. Not only would the shifting engine have to go back in that direction before doing shifting on siding No. 2, or in reaching the main line with its train, but it would be compelled to go back upon or over the crossing which the plaintiff was approaching and where he was injured. The engine which struck the plaintiff being used on those switches chiefly if not entirely for switching purposes, the plaintiff must have known that in doing its work it would necessarily run backwards and forwards over them. That it would do so was to be presumed, for otherwise it could not do that work.

Instead, therefore, of the facts and circumstances of this case relieving the plaintiff from the duty of looking and listening before going upon the crossing, they show, as it seems to us, that he not only did not have any reasonable ground to believe that the train would not return before he

could pass over the crossing, but that it was highly prob-able that it would do so. Certainly there is nothing in the facts and circumstances of the case to take it out of the general rule, that failure to look and listen before going upon a railway crossing is *per se* negligence.

But it is insisted by the plaintiff that even if he was guilty of contributory negligence, the court erred in sustaining the demurrer to the evidence, because the de-fendant could by the exercise of ordinary care have avoided injuring him after it saw or ought to have discovered his peril. It clearly appears from the plaintiff's own evidence that he was struck by the corner of the tender of the en-gine, just as he entered upon the crossing, as he stepped on or over the rail nearest to him, and was thrown back on the side of the track from which he approached the crossing. He was not in peril until he started to cross the track, and it was then too late for the engineer to have stopped his train or avoided injuring the plaintiff if he had been on the lookout and had seen the plaintiff's danger.

Upon the whole case we are of opinion that there is no error in the judgment complained of, and that it should be affirmed.

*Affirmed.*