# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## N. & W. R. R. Co. v. Gilman's Adm'r.

### July 9th, 1891.

### Absent, *Richardson*, J.

1. NEGLIGENT INJURIES—*Contributory negligence.*—If in his declaration plaintiff alleges that his injury was caused by the defendant's negligence, it is sufficient; and it is not necessary to deny that he was guilty of contributory negligence. If defendant relies on the contributory negligence of plaintiff to defeat the suit, he must prove it, unless the fact be inferrable from all the circumstances.

2. IDEM—*Employer's duty.*—Employer should use ordinary care to supply and maintain suitable and safe appliances for the work to be performed, and to provide generally for the safety of his employee in the course of his work.

3. IDEM—*Case at bar.*—In action for damages for death by defendant's negligence, a train of six cars was run along a coal wharf, upon a wooden structure, twenty-five feet high and 300 feet long. At the end was only a log chained to the wharf. The chain gave way and let the cars pass over the end, killing the plaintiff's intestate, who was a brakeman. The defendant had ordered timbers four years before to build a deadblock, but it was not built;

HELD:

> Negligence on part of defendant company caused death of plaintiff's intestate, and it is liable.

Error to judgment of circuit court of Smyth county, rendered December 24th, 1889, in an action for trespass on the case for negligent killing of John S. Gilman, wherein decedent's administratrix, Elizabeth Gilman, was plaintiff, and the Norfolk and Western Railroad Company was defendant. The

verdict and judgment being against the defendant company, it brought the case here upon writ of error and *supersedeas*. Opinion states the case.

*William H. Bolling*, for plaintiff in error.

*Blair & Dickenson*, for defendant in error.

LACY, J., delivered the opinion of the court.

This action is trespass on the case by the defendant in error against the plaintiff in error, the Norfolk & Western Railroad Company, for the alleged negligent killing of her intestate, J. S. Gilman, deceased. The said J. S. Gilman was a brakeman in the employment of the plaintiff in error, the Norfolk & Western Railroad Company, when the injury was inflicted upon him of which he died. An engine, pushing six loaded coal cars up a steep ascent which led up to the top of an elevated structure, called a " coal wharf," was run up to the top of the ascent, or nearly so, with two brakemen to man the brakes upon the coal cars. This coal wharf was twenty-five feet high and on the level 300 feet long. When some of these cars had been pushed over the ascent, and upon the level wharf, the engineer shut off steam, sounded for brakes, and upon the evidence, as we must regard it, reversed his engine. The strain thus thrown upon the coupling, by the sudden halt of the engine when fastened to six loaded cars, moving with considerable impetus imparted by the rapid motion of the engine up the ascent, caused the coupling-pin to break, and the cars and engine parted company. The object the engineman had in halting and reversing the engine was to hold the cars, so that they would remain on the wharf, and not run off at the far end, which was high from the ground, and presented a danger point. But either the pin was defective, or the halt too sudden, and, the engine no longer holding the cars, they rolled

on to the end of the wharf, and pushing off a temporary obstruction placed there to check them, fell over the end. One brakeman jumped off when the engine broke loose, upon a gang-plank, which ran along the side, and then, by another jump, landed on the coal-heap, and thus saved his life; but the said J. S. Gilman, now deserted by his co-laborer and fellow servant, manfully stuck to his post, and pursued the only possible course to save the company, his employer, from loss, and put the brakes down on his car, the first, and ran upon the second, put the brakes on that, and upon the third also, and was in the act of manning the brakes upon the fourth, when he went down, bravely turning the brakes on that. His life was forfeited under circumstance which all must respect. He was killed at the post of duty. His wife qualified as his administratrix, and instituted this suit for damages against the said railroad company because of the alleged negligence which had caused the injury. At the trial the jury rendered a verdict for the plaintiff in the sum of a thousand dollars. The defendant moved the court to set aside the verdict, and grant a new trial. The grounds of the motion are not stated in the bill of exceptions, but this motion the court overruled, and the defendant having excepted to the ruling of the court in giving and in refusing certain instructions, and all the evidence having been certified, the said defendant applied for and obtained a writ of error to this court.

The first error assigned here by the plaintiff in error is to the action of the circuit court in overruling the defendant's demurrer to the plaintiff's declaration; the ground of the demurrer being that the declaration does not deny that the plaintiff was guilty of contributory negligence. In an action for damages occasioned by the negligence or misconduct of the defendant, it is not necessary for the plaintiff to allege and prove the existence of due care on his part to entitle him to recover. If the defendant relies upon contributory negligence of the plaintiff to defeat the action, he must prove it, unless,

indeed, the fact is discovered by the evidence of the plaintiff, or may be fairly inferred from all the circumstances. As proof of due care on his part is not a part of the plaintiff's case, it is, of course, not necessary that he should aver it in his declaration. If the defendant relied on the contributory negligence of the plaintiff, it is matter of proof for him, either by testimony adduced by him, or as matter of inference deducible from the evidence of the plaintiff. But it is not the duty of the plaintiff to negative it by proof, and no part of his case to deny it in his declaration. Shear & R. Neg. § 43; *Railroad Co. v. Gladmon,* 15 Wall, 401; *Railroad Co. v. Whittington,* 30 Gratt. 809. In *Improvement Co. v. Andrew,* 86 Va. 273, this court said as to this: "It is true that some of the courts, in some of the states, have thrown this subject into some obscurity by 'conflicting and evasive decisions,' as they are termed by Shearman and Redfield. And an interesting discussion of the subject and comparison of decisions may be found in their work on Negligence, § 43. But we do not consider it necessary to cite nor to discuss them. The subject is well settled here in this state upon what we consider the correct principle—that negligence on the part of the plaintiff is a mere matter of defence, to be proved affirmatively by the defendant, though, of course, it might be inferred from the circumstances proved by the plaintiff. This was the view held by Duer, J., in *Johnson v. Railroad Co.* 5 Duer, 21, when he pointed out that parties were never required to prove negative matters of this kind, and that it had never been held necessary, in a complaint upon negligence, to aver that the plaintiff had taken due care. The error assigned as to the instructions given by the court to the plaintiff are rather as to abstract question of law than statements of the law applicable to this particular case, and is not pressed nor insisted on here, the instructions being drawn to meet phases of the case not now relied on; there being no insistence that the plaintiff, by standing by the brakes, and going down to death, rooted to his post of

duty, was thereby guilty of contributory negligence which caused his death, or contributed proximately thereto. Nor does the question as to whether the engineer and the jumping brakeman were fellow-servants play any part in the controversy here. It is not necessary, therefore, to review at length the instructions, the question having been narrowed here to the single inquiry whether the injury to the plaintiff was caused by the negligence and want of due and proper care on the part of the defendant company.

And for the due consideration of this question, bearing in mind the well-established rule of evidence, that where the evidence is certified as in this case, the case must stand as upon a demurrer to evidence, let us turn to a brief review of the evidence of the plaintiff, and such evidence of the defendant as is not in conflict therewith. And we find this case : The cars were pushed up this ascent, and run upon a wharf high above the ground—a wooden structure raised twenty-five feet. They were then and always were loaded with coal when going up. Six cars loaded with coal, and in motion upon a level 300 feet long, left but little margin for them to be stopped in by the brakes, and, if anything should happen to the engine so that they should become detached the brakes were the only hope, unless some obstruction was placed on the end of the wharf. It was proved in the evidence that the company had fastened a log at the end or near the end of the wharf by a chain attached to the middle of the log by a hook. The defendant's own witness states that the cars, as they passed along on this wharf, were not going faster than a man walks, their speed having been so far checked by the engine before they parted with it by the breaking of the pin, and by the brakes which had been set. But nevertheless they snapped this chain, and went over. They came against a log not bolted down, but tied with a chain in the middle, and it furnished no better safeguard than a fence-rail would have done. That the company had ordered heavy pieces of timber forty-five feet long,

fourteen inches square at one end, and twelve inches square at the other end, these to be set in the ground, and bolted to heavy timbers placed in upright position on the wharf track, so as to prop the upright pieces with the long pieces forty-five feet in length. That at the time the wharf constructor said that these timbers were wanted, as he regarded the chained log as only temporary. That the witness Sprinkle had declined to furnish these timbers; and, although four years had elapsed, they had not been furnished to the company, which had continued to use the temporary contrivance, until at last it gave way before the strain we have mentioned. If the stout battery indicated above had been furnished, there is no reason to believe that these cars, heavy as they were would have broken it down. Was it not the duty of the company to have furnished a safe and suitable structure at the end of this wharf, so as to have guarded as far as possible against injury to its employees engaged in this truly perilous employment of riding up this steep place before an engine struggling with its immense burden to such a height. What is the law? The defendant company was bound to use ordinary care; that is to say, such care as reasonable and prudent men use, under like circumstances, in selecting competent servants, and in supplying and maintaining suitable and safe appliances for the work so to be performed, and in providing generally for the safety of the servant in the course of his employment, regard being had to the work, and to the difficulties and dangers attending—for what would be ordinary care in one case may be gross negligence in another. Beach, Contrib. Neg. 22; Thomp., Neg. 982.

And, has been often said here, nothing is better settled than that the employee takes upon himself all the natural risks and perils incident to the service, and this grows out of the contract which the law implies from the engagement of the parties. When a servant enters upon an employment, he accepts the service, subject to the risk incident to it. An employee who

contracts for the performance of hazardous duties assumes such risks as are incident to their discharge from causes open and obvious, the dangerous character of which causes he had opportunity to ascertain.  If a man chooses to accept employment, or continue in it, with the knowledge of the danger, he must abide the consequences, so far as any claim against his employer is concerned.  On the other hand, it is the duty of the company to exercise all reasonable care to provide and to maintain safe, sound and suitable machinery, road-way structures and instrumentality; and it must not expose its employees to risks beyond those which are incident to the employment, and were in contemplation at the time of contract of service; and the employee has the right to presume these duties have been performed.  Here we have six cars under brakes as to three, and also checked up; that they were proceeding on a level at a rate of speed at which a man commonly walks; and as they were on a level, and not on a down grade, their speed was decreasing, because their tendency, on a level, was to come to a stand-still.  And yet so inadequate was the " dead-block," as it is called here, that the cars were not only not stopped by it at this slow rate of speed, but checked by it so little that they rolled on over the brink, and were piled up in a mass of ruins, with fatal result to the faithful brakeman.  None can doubt that, if these heavy timbers had been planted there, resting in the solid earth, the accident would have been prevented.  Did not the company know they were necessary?  Clearly so, because the record shows that they were ordered, and when one man declined to furnish them, the evidence does not disclose any further effort to procure them, simple as the matter was, and easy of adjustment; as it is not to be doubted that timbers of that or similar size are in frequent use by the company in its structures.  The company declared this chained log to be a temporary expedient; but yet four years passed, and this temporary contrivance was allowed to become permanent, and was allowed to remain there until the injury happened.  Was

not this negligence? The structure was temporary only, and not safe. This was known to the company, as better timbers were ordered, and yet knowing the danger, and advised of the need, days were allowed to run into weeks, weeks into months, months into years, and still the temporary and unsafe structure had not been replaced by the permanent and substantial contrivance in use elsewhere, and which, if it had been in place on this wharf, would have arrested without danger these slowly-moving cars. This was negligence beyond question, and this was the negligence in this case which caused the injury, and without which it would probably not have happened. Of course, we understand that no dead-blocks and no battery, however substantial, could prevent disaster, when brought into collision with an escaped or otherwise rapidly-moving train, beyond control; but an elevated coal wharf can never, under ordinary conditions, be submitted to any such catastrophe. Trains pushed up a very steep ascent can never retain any very great velocity, and there is no reason why this obstruction at the end should not be made substantial and safe. It is clear that the injury was caused by the negligence of the company as indicated, to which the injured party in no degree contributed, and the plaintiff was entitled to recover. There is no complaint as to the amount of the damages. The jury fixed these at a thousand dollars, and they cannot be considered excessive. We perceive no error in the judgment complained of, and the same must be affirmed.

JUDGMENT AFFIRMED.