# Wytheville.

## Virginia Railway and Power Company v. W. J. Oliver.

### June 15, 1922.

#### Absent, West, J.

1. Street Railways—*Crossings—Contributory Negligence—Question for Jury—Case at Bar.*—In the instant case, an action for injuries sustained by a collision at a street railway crossing, plaintiff testified that as he approached from the north the crossing where the accident occurred, he looked east at a point where he could have stopped if he had seen a car approaching, and estimated that at that point he could see about ninety feet east. Measurements appearing in the evidence showed that when plaintiff's horse was eighteen or twenty feet from the rails, plaintiff had an unobstructed view of the track towards the east for the entire length of the block. Under a city ordinance street cars and vehicles going east or west had the right of way over those going north or south. Defendant demurred to the evidence, and the primary negligence of defendant in failing to give warning, keep a proper lookout, and the excessive speed of the car were conceded. Defendant contended that the plaintiff, as shown by his own testimony and the physical conditions surrounding him, would have necessarily seen the car in time to avoid the collision if he had looked out for it as an ordinarily prudent man would have done.

   *Held:* That the question was one upon which a jury might properly have found either for or against the plaintiff, and that a verdict either way would have been conclusive. That this being true, the demurrer to the evidence was properly overruled.

2. Street Railways—*Crossings—Contributory Negligence—Question for Jury—Case at Bar.*—In an action for injuries sustained at a crossing, although it was doubtless true that plaintiff could have seen the car which caused his injuries somewhere in the block when he said that he looked to the east, from which direction the car was approaching, about ninety feet, yet as plaintiff did not attempt to do more than to approximate the distance of the horse from the track when he looked or how far he looked to the east, and as he was not required, in the exercise of ordinary care, to look the whole length of the block, it could not be said that plaintiff's contributory negligence conclusively appeared from his testimony.

3. CROSSINGS—*Street Railways—Contributory Negligence—Assumption that a Car will Observe the Speed Limit—Right of Way—Duty to Stop.*—In an action for injuries sustained at a crossing, if plaintiff had looked even further in the direction from which the car was approaching than he did, and had actually seen the car at the far end of the block, he might reasonably have relied to some extent upon the assumption that it would observe the speed limit, and if it had done so he would have crossed in safety. Under such circumstances the right of way which the car had under an ordinance did not obligate plaintiff to stop and wait for the car to pass.

4. STREET RAILWAYS—*Crossings—Duty of Person Approaching Crossing—Case at Bar.*—In the instant case, an action for injuries arising out of an accident at a street railway crossing, it appeared from plaintiff's evidence that at a short distance from the crossing, as he said, "as close as to stop in case a car was approaching," he looked east for a reasonable distance, then looked west, and seeing no car, "kept straight on."

   *Held:* That this was what the ordinarily prudent driver does at a crossing.

5. STREET RAILWAYS—*Crossings—Excessive Speed—Case at Bar.*—In the instant case, an action for injuries sustained at a street railway crossing, the fair inference from the evidence was that the car was exceeding the speed limit, and traversed the distance between it and plaintiff down grade in fewer seconds than were required for plaintiff to cross the tracks after making what an ordinarily prudent driver of a wagon would have regarded a safe lookout. This inference was strengthened by the fact that the car, after striking the wagon, dragged it along nearly half a block before it stopped.

   *Held:* That it was at least highly probable that the excessive speed of the car was the proximate cause of the accident.

Error to a judgment of the Hustings Court, Part II, of the city of Richmond, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*E. R. Williams* and *T. Justin Moore,* for the plaintiff in error.

*L. O. Wendenburg* and *T. Gray Haddon,* for the defendant in error.

KELLY, P., delivered the opinion of the court.

[1] This action was brought by W. J. Oliver against the Virginia Railway and Power Company to recover damages for personal injuries sustained by him when a dairy wagon which he was driving was struck by one of the company's street cars at the intersection of Fourth and Main streets, in the city of Richmond. The defendant demurred to the evidence, and this is a writ of error to the judgment of the trial court overruling the demurrer and awarding the plaintiff a recovery for the amount fixed by the jury in their conditional verdict.

The declaration charged the defendant with negligence in failing to keep a proper lookout for persons and vehicles at the crossing, in operating the car at an excessive and dangerous speed, and in failing to give notice of its approach as required by the city ordinance.

Fourth street runs north and south, and Main street runs east and west. The defendant operates a double-track car line on Main street. The accident occurred on the west-bound track, which is situated slightly north of the middle of the last-named street.

Ordinances of the city, which were in evidence, provide that all vehicles and street cars going east or west shall have the right of way over all vehicles or street cars going north or south; and that street cars shall not run at a greater rate of speed than twelve miles an hour, and shall give ample notice of their approach to drivers of vehicles, and also "afford all reasonable opportunity for them, or either of them, to avoid collision or accident."

The plaintiff had come south on Fourth street, and was attempting to cross Main, when his wagon was

struck by a west-bound street car, and he received the injuries for which this action was brought. He describes the character and extent of the precaution and lookout exercised by him as follows:

"As soon as I approached Main street, got as close as I thought to Main street as to stop in case a car or anything of that sort had been approaching anywhere in the way, I looked east across the corner of Fourth street by the corner of the house, which I could see clear about ninety feet back, as well as I could estimate from the point I was at. * * * As near as I can get at it my horse was about eighteen or twenty feet, something like that, from the track. Then, of course, the time I looked that way and looked west to see that everything was clear, my horse was going (in a slow or jog trot) at the same time, all that happened in about the time it took me to get on the track, when the crash came. * * * After I looked to the east and west I kept straight on. * * * When the crash came was my first knowledge of it (the car)."

Accurate and undisputed measurements appearing in the evidence show that when the horse was eighteen or twenty feet from the rails, the plaintiff had an unobstructed view of the track to the east for the entire length of block back to Fifth street. He could, perhaps, not have seen a car much further off in that direction than Fifth street, because of the rather precipitous down grade on Main street to the east from the Fifth street crossing. After coming up the hill from the east to that crossing the tracks run slightly down grade to Fourth street.

The motorman gave no signal or warning of his approach, and in fact was not looking ahead and was paying no attention whatever to the crossing.

A witness named Callis, a railroad conductor of

many years experience, who happened to be a passenger on the street car, testified that he had some knowledge of speed, that he would not like to estimate the speed of the car, but that it was behind time and "was running very fast," so fast as to make "trees and all dart by the windows." Another railroad conductor, also a passenger on the car, estimated the speed as being fifteen or eighteen miles an hour. The witness Callis further testified that for certainly as much as a minute, and probably longer, just prior to the accident, the motorman was looking back over his shoulder, and talking to the street car conductor, and that when the collision occurred the motorman "had his head turned in this way, telling the conductor something, looking over his shoulder, and they were talking and both laughed; they were both in a big laugh about something, and he was looking at the conductor at the time they hit."

The horse appears to have cleared both rails before the wagon was struck. He was thrown down by the force of the collision with the wagon, but fell on the south side of the track, and his only injury was a small abrasion on the opposite side from the car, caused perhaps by the fall. The wagon was torn loose from the horse, and was carried for a distance of nearly half of the next square before the car was stopped. The wagon was completely wrecked, and, when the car stopped, was on the north side hanging to the right hand fender. In explanation of this situation the plaintiff testified that "after the car had dragged it that way, it had slid around to the side."

With the exception of the city ordinance relating to the right of way, and certain measurements and physical conditions at and near the crossing, the defendant introduced no evidence. It is conceded

by counsel for the defendant that the negligence alleged in the declaration must be regarded upon the demurrer as sufficiently established; but we have set out the evidence somewhat fully because we regard it quite material, not only as supporting the charge of defendant's primary negligence, but also as throwing light upon the question, whether the plaintiff was guilty of contributory negligence as a matter of law.

It is the theory of the defendant that the plaintiff, as shown by his own testimony and the physical conditions surrounding him, would have necessarily seen the car in time to avoid the collision if he had looked out for it as an ordinarily prudent man would have done. We are unable to take this view of the case, but are of opinion that the question was one upon which a jury might properly have found either for or against the plaintiff, and that a verdict either way would have been conclusive upon the court. This being true, the demurrer to the evidence was properly overruled.

[2, 3] It is doubtless true, as contended, that the plaintiff could have seen the car somewhere in the block when he says he looked to the east about ninety feet, for, notwithstanding the high speed of the car, it had then probably topped the hill at Fifth street, but it must be remembered, first, that the plaintiff did not attempt to do more on his direct examination and declined to attempt more on cross-examination than to approximate the distance of the horse from the track or how far he looked to the east; and, second, that he was not required, in the exercise of ordinary care, to look the whole length of the block. His cross-examination tended to show that his horse was closer to the track than his first estimate of eighteen or twenty feet, but was still in safe stopping distance

when he looked east.   However this may be, if he had looked even further east, and had actually seen the car at the far end of the block, he might reasonably have relied to some extent upon the assumption that it would observe the speed limit, and if it had done so he would have crossed in safety.   Under such circumstances the right of way ordinance did not obligate him to stop and wait for the car to pass.   *Va. Ry. & P. Co.* v. *Hill*, 120 Va. 397, 405, 91 S. E. 194; *Va. Ry. & P. Co.* v. *Slack Grocery Co.*, 126 Va. 385, 393-4, 101 S. E. 878.

[4] It seems to us that a very fair view of the plaintiff's evidence is this: At a short distance from the crossing, as he says, "as close as to stop in case a car was approaching," he looked east for a reasonable distance, then looked west, and, seeing no car, "kept straight on."   This is what the ordinarily prudent driver does at a crossing.   Of course, it is true that the car was quite near when he actually went on the track, but he could not look east and west and straight ahead all at the same time, and he had, as every driver at such a crossing has, three avenues to watch.   The car undoubtedly caught him in a few seconds after he looked east, but street railway crossings in cities usually must be made in seconds, and if the car had been running at a lawful speed he would have crossed in safety.   His horse was across, and in perhaps a second more the wagon would have cleared the track.

[5] It seems at least highly probable that the excessive speed of the car was the proximate cause of the accident.   The testimony of the witness, Callis, is clear and positive to the effect that the car was running very fast, that the motorman had been talking to the conductor and had his head turned toward the rear of the car for at least a minute and probably

longer, and that they were "in a big laugh" when the wagon was struck. The fair inference is that the car, after coming up the hill to Fifth street under high power, was given no attention by the motorman, and traversed the distance down grade between Fifth and Fourth streets in fewer seconds than were required for the plaintiff to cross the tracks after making what an ordinarily prudent driver of a wagon would have regarded a safe lookout. This inference is strengthened by the fact that, after striking the wagon and tearing it loose from the horse, the car dragged the wagon along, according to the testimony of Callis, nearly half the length of a city block before it stopped.

We are of opinion that this case is controlled by the principles announced in *Va. Ry. & P. Co.* v. *Slack Grocery Co., supra,* and other similar cases therein cited, and not by the decision in *Va. Ry. & P. Co.* v. *Boltz,* 122 Va. 649, 95 S. E. 467, and others like it relied on by the defendant.

The judgment is affirmed.

*Affirmed.*