# Richmond.

## BLACKBURN SMITH, ADMINISTRATOR OF AMOS CHAPMAN, DECEASED, v. WALKER D. HINES, DIRECTOR GENERAL OF RAILROADS OF THE UNITED STATES AND AGENT UNDER THE FEDERAL TRANSPORTATION ACT OF 1920.

### November 16, 1922.

1. DEMURRER TO THE EVIDENCE—*General Rule.*—The demurrant is considered as admitting the truth of all his adversary's evidence and all just inferences that can be properly drawn therefrom by the jury, and as waiving all of his own evidence which conflicts with that of his adversary, or which has been impeached, and all inferences from his own evidence (although not in conflict with his adversary's) which do not necessarily result therefrom.

2. DEMURRER TO THE EVIDENCE—*Impossibilities—That which is Judicially Known to be Untrue.*—The court, however, is not obliged to accept as true what it knows judicially to be untrue, nor what, in the nature of things, could not have occurred in the manner and under the circumstances mentioned, nor what is not susceptible of proof.

3. CROSSINGS—*General Rule—Warnings of Approach of Train—Traveler's Duty—Duty to Look and Listen—Last Clear Chance.*—It is a general rule of law that while it is the duty of a railway company to give notice of the approach of its trains to a crossing, the reciprocal duty is imposed upon a person about to go on its track to exercise ordinary care and caution, whether it be a highway or a licensed way. The track itself is a proclamation of danger. It is his duty before going upon it to look and listen. If he fails, and is injured thereby, his own act and negligence so contribute to his injury that he is not entitled to recover, unless the company, after it discovered or ought to have discovered his peril, might have avoided the injury by the exercise of ordinary care.

4. CROSSINGS—*Duty to Look and Listen—Exceptions to the General Rule.*—There is a class of cases in which it is held that reasonable belief that no train is approaching a crossing relieves a traveler who fails to look and listen of the imputation of negligence as a matter of law; *e. g.*, where the warning gong at the crossing is silent, in cases of flying switches, where one train follows another so closely as to mislead or confuse a traveler, etc.

5. CROSSINGS—*Care of Traveler in Approaching Crossing—Burden of Proof.*
—The burden of showing that a traveler injured or killed at a cross-
ing was not in the exercise of ordinary care and caution in approach-
ing the crossing is upon the defendant, unless it is disclosed by the
plaintiff's evidence, or can be fairly inferred from all the circum-
stances of the case.

6. CROSSINGS—*Care of Traveler in Approaching Crossing—Open Gate or
Silent Gong—When Negligence of Traveler Question for Jury—Where
Reduced Speed and Timely Warnings are to be Expected.*—The erection
of gates, gongs, or other devices at highway or street crossings to
warn travelers of approaching trains does not excuse a traveler at
such crossings from exercising ordinary care and caution.   And while
courts and text writers differ as to the degree of reliance that may be
placed upon the invitation which an open gate or silent gong gives to
the traveler to cross, they generally, if not universally, hold that the
same degree of care and caution is not required of him as if there was
no such invitation.   The question of negligence in such a case is
peculiarly one for the consideration of the jury.   And the rule as to
a silent gong applies equally well to the conduct of a traveler at a
crossing where reduced speed and timely warnings are reasonably to
be expected.

7. CROSSINGS—*Obstruction—When Contributory Negligence for Jury.*—
Where the view of the track is obstructed, and the railroad company
has failed to give notice of the approach of its train to a crossing upon
the highway, and a person in attempting to go across the track, not
being able to see the train on account of obstructions, and being
obliged to act upon his judgment at the time of crossing, is injured,
the propriety of his going upon the track under such circumstances is
not a question of law to be decided by the court, but a matter of fact
to be determined by the jury.

8. NEGLIGENCE—*Contributory Negligence—Presumption of Contributory
Negligence.*—Contributory negligence is as distinctly a wrong in the
plaintiff as negligence is in the defendant, and it is as much against
the principles of the law to presume it on the one side as on the other.

9. CROSSINGS—*Contributory Negligence—Presumption of Contributory Neg-
ligence—Case at Bar.*—In the instant case, a demurrer to the evidence
in an action for death arising out of an accident at a crossing, the evi-
dence showed that decedent slowed up his truck as he approached the
crossing, and there was no evidence that he did not look and listen.
The inference most favorable to the demurree must be drawn from
the fact that decedent reduced the speed of his truck.

*Held:* That self-preservation and the duty to protect the children rid-
ing with decedent and in his care negatived the suggestion of negli-
gence and strengthened the presumption that he was exercising
ordinary care.

10. CROSSINGS—*Contributory Negligence—Choice Between two Courses of Ac-*

*tion—Case at Bar.*—In the instant case plaintiff's intestate was killed while attempting to cross the railroad track. The gong at the crossing was not sounding and because of a high wind and the noise of a near by mill the noise of the approaching train could not be heard. On account of obstructions he could not see the approaching train until he was within fifteen or eighteen feet of the track. The speed of the train was excessive.

*Held:* That, in such emergency, with only four and one-half seconds in which to decide whether to proceed or to apply his brakes, it was not negligence in law if decedent acted unwisely.

11. Negligence—*Contributory Negligence—Sudden and Unexpected Danger—Choice of Course of Action.*—In cases of sudden and unexpected danger, necessitating immediate decision as to which of two or more ways of escape should be resorted to, the law makes allowance for errors of judgment, even though it appears that a resulting accident could have been avoided if the party so placed in peril had pursued a different course.

12. Crossings—*Contributory Negligence—Look and Listen—When Care to be Exercised by Traveler for Jury—Case at Bar.*—In the instant case, an action for death arising out of a collision at a crossing, it was conceded that the defendant railroad was negligent in failing to give any signal for the crossing, that the electric gong was silent, and that the train was running about forty miles an hour across a much traveled street. The noise of the approaching train could not be heard by the decedent. Decedent's view of the track was obstructed until he was within fifteen or eighteen feet thereof. Decedent reduced his speed but did not stop.

*Held:* That it could not be said as a matter of law that plaintiff's intestate was guilty of contributory negligence. His negligence was a question for the jury, and as they might have found for the plaintiff, the court must upon a demurrer to the evidence.

Error to a judgment of the Circuit Court of Clarke county, in an action of trespass on the case. Judgment for defendant. Plaintiff assigns error.

*Reversed and final judgment.*

The opinion states the case.

*Ward & Larrick, Blackburn Smith* and *Robert F. Leedy,* for the plaintiff in error.

*Aubrey G. Weaver* and *W. T. Lewis,* for the defendant in error.

WEST, J., delivered the opinion of the court.

This action arises out of a collision between an automobile truck operated by the plaintiff's intestate, Amos Chapman, and a train operated by the Director General of Railroads over the Norfolk and Western Railway, in which Chapman was instantly killed and the truck demolished. The jury returned a verdict for $10,000 in favor of the plaintiff, subject to the ruling of the court on a demurrer to the evidence. The demurrer was sustained and judgment entered for the defendant, and the case is here on a writ of error.

The Berryville turnpike, extending from the Shenandoah river to Winchester, passes through the town of Berryville, where it traverses Main street. It is much traveled and is the principal highway to Berryville and points beyond. The Norfolk and Western Railway, running north and south, crosses this turnpike in Berryville near the east end of Main street. The company's passenger station is 800 feet south of said crossing and its freight station 114 feet north thereof, both on the west side of the track. Immediately west of the railway tracks on the north side of the turnpike is located an electric bell, called a magneto highway alarm, which was installed and operated by the railway company. On the east side of the tracks and north of the turnpike there are a number of warehouses and other buildings along the right of way for a distance of eight or nine hundred feet, obstructing, in large measure, the view from the turnpike of a train coming from the north.

On January 29, 1919, the plaintiff's intestate, Amos Chapman, drove a five ton truck loaded with ties from the Shenandoah river to Berryville. Three little girls, daughters of his employer, who were on their way to school, were seated in the cab of the truck with him.

As the truck crossed the railway tracks it was struck by the company's south-bound passenger train No. 13, which was running forty miles an hour. The rear wheels of the truck with the load of ties were thrown to the east of the track while the front wheels with the cab were thrown to the west. Three of the occupants were instantly killed and the fourth seriously injured. Chapman's body was hurled a distance of 149 feet from the track. The engineer had released his brakes and increased his speed when coming around the curve about 500 feet north of the crossing, and although he applied them the moment he felt the impact, the pony truck wheels left the rails and the train continued to run for 630 feet with them bumping the crossties.

Chapman was a steady, trustworthy man and a careful driver. The truck was seventeen feet long and, when he left home that morning, the brakes were in good order. It was geared not to exceed fifteen miles per hour, and when loaded and going at that rate of speed could be brought to a stand-still in twelve to eighteen feet; if going slower, in a less number of feet.

In crossing the railway from east to west it was necessary to cross three tracks: first, the switch track, which ran south to the doors of the Clarke County Milling Company and no further; second, the main line track; and, third, the station siding track, which ran down past the freight depot. At some points west of the crossing there were as many as five sidetracks, or connecting tracks. Approaching the crossing from the east, the truck driver's view of the train coming from the north was obstructed by the Baker warehouse and a box car standing on the sidetrack in front thereof. Not until *he* reached a point in the center of the pike 24½ feet east of the east rail of the main line track could the driver of the truck see the train, then at a point 264

feet north of the crossing, as it came around the curve
and from behind the box car on a sidetrack. The seat
of the truck cab was six feet from the front of the radi-
ator. The curtain on the right side of the cab was
down, but the windows in the curtain gave the driver
an unobstructed view to the right. The elevation at
the crossing is nine feet higher than at a blacksmith
shop located 265 feet east of the crossing. The truck,
which had been running at a speed estimated from seven
to fourteen miles per hour, slowed down when it got in 150
feet of the crossing, but did not stop before going on the
crossing.

Chapman had been hauling ties over the crossing "off
and on" for some months and was well acquainted with
the conditions at that point. He was aware of the
highway alarm gong maintained there by the company
for the protection of traffic, which, when in order, be-
gins to sound the alarm whenever a train from either
direction approaches within 1,000 feet of the crossing.

The foregoing facts and the facts hereinafter stated
are substantially as stated in the petition of the plaintiff
in error and in the brief of the defendant in error, and
are the material facts in the case.

In our view of the case, it will only be necessary to
consider the plaintiff's second assignment of error, in-
volving the action of the court in sustaining the de-
murrer to the evidence and setting aside the verdict of
the jury and entering judgment for the defendant.

[1, 2] The rule to be applied in the consideration of a
demurrer to the evidence is stated in Burks' Pl. & Pr.
(2d ed.), sec. 251, as follows: "The demurrant is con-
sidered as admitting the truth of all his adversary's
evidence and all just inferences that can be properly
drawn therefrom by the jury, and as waiving all of his
own evidence which conflicts with that of his adversary,

or which has been impeached, and all inferences from his own evidence (although not in conflict with his adversary's) which do not *necessarily* result therefrom. The court, however, is not obliged to accept as true what it knows judicially to be untrue, nor what, in the nature of things, could not have occurred in the manner and under the circumstances mentioned, nor what is not susceptible of proof."

Under the foregoing rule, it is proven that the defendant failed to give any signal for the crossing, by whistle, bell, or otherwise; that the electric gong was silent; and that the train was running forty miles an hour. The defendant's counsel also admits the company was negligent in these respects, but claims that the plaintiff was guilty of contributory or concurrent negligence which contributed as a proximate, efficient, or concurrent cause of the accident, which bars his right to recover.

The chief contention of the plaintiff is that the proven negligence of the defendant in failing to give the statutory signals as required by law, to sound the gong or to give any other warning, and in failing to reduce the excessive and unusual speed of the train as it approached the crossing, were, under the circumstances, the efficient and proximate cause of the collision; and that the evidence relied on to show contributory negligence on the part of the plaintiff in the manner of his approach to the point of collision does not show contributory negligence in law.

[3] It is a *general rule* of law that while it is the duty of a railway company to give notice of the approach of its trains to a crossing, the reciprocal duty is imposed upon a person about to go on its track to exercise ordinary care and caution, whether it be a highway or a licensed way. The track itself is a proclamation of dan-

ger. It is his duty before going upon it to look and listen. If he fails, and is injured *thereby*, his own act and negligence so contribute to his injury that he is not entitled to recover, unless the company, after it discovered or ought to have discovered his peril, might have avoided the injury by the exercise of ordinary care. *Boyd* v. *Southern Ry. Co.*, 115 Va. 11, 78 S..E. 548, Ann. Cas. 1914-D, 1017; *Johnson* v. *C. & O. Ry.*, 91 Va. 171, 21 S. E. 238.

[4] Judge Buchanan, speaking for the court in *Boyd* v. *Southern Railway Company*, *supra*, at page 16, of 115 Va., at page 550 of 78 S. E. (Ann. Cas. 1914-D, 1017), says: "There is a class of cases in which it is held that reasonable belief that no train is approaching a crossing relieves a traveler who fails to look and listen of the imputation of negligence as a matter of law.

"In the case of *Kimball & Fink* v. *Friend*, 95 Va. 125, 27 S. E. 901, where there was a silent gong, and in *Southern Ry. Co.* v. *Aldridge*, 101 Va. 142, 43 S. E. 333, where the watchman failed to perform his duty, it was held that the question of negligence on the part of the travelers in going upon the crossing where injured, was a question of fact for the jury, under all the facts of those cases, and not a question of law for the court." Judge Buchanan further says:

"It has also been held that the traveler's negligence is a question for the jury where he attempts to cross a railway track immediately after one train has passed and another follows so quickly as to mislead or confuse him and he is injured. And in cases of flying switches, where the train has been severed and the traveler goes upon the crossing after the first section has passed and is struck by the second; and also where a traveler seeing a train pass on or towards the main line of the railroad, goes upon the track and is injured by the train immediately returning."

In *Kimball & Fink* v. *Friend*, 95 Va. 125, 27 S. E. 901, *supra*, the facts were these: The approach to the railroad crossing for three hundred feet along a much traveled road was through a cut. The company had erected there an electric gong to warn travelers of the approach of trains. The deceased approached the crossing on a bicycle going about as fast as an ordinary horse trots, and was struck by an engine and killed. The track in the direction from which the train came could be seen from the center of the highway for twenty-one feet when within twenty-five feet of the nearest rail, fifty-five feet when ten feet nearer, and seven hundred feet when within nine and a half feet of the rail. No notice was given of the approaching train either by sounding the gong, ringing the bell, blowing the whistle, or otherwise. The railroad track in the direction from which the engine came was visible at several points from the road over which the deceased traveled before he reached the cut which leads to the crossing. The deceased did not stop as he approached the crossing, and the record is silent as to whether he did or did not look and listen for the approaching train. Judge Buchanan, speaking for the majority of the court in that case, at p. 138 of 95 Va., at p. 903 of 27 S. E., says:

"The record, considered as on a demurrer to the evidence, shows, and the verdict of the jury establishes the fact, that the defendants negligently and improperly failed to give the deceased warning of the approaching engine, and that this negligence caused the accident. It is insisted, however, that although the defendants were guilty of negligence, the deceased was guilty of contributory ngeligence, and the plaintiff. is, therefore, not entitled to recover.

[5] "The burden of showing that the deceased was not in the exercise of ordinary care and caution in ap-

proaching the crossing was upon the defendants, unless it was disclosed by the plaintiff's evidence, or can be fairly inferred from all the circumstances of the case. *Balto. & Ohio R. Co.* v. *Whittington,* 30 Gratt. (71 Va.) 805; *Improvement Co.* v. *Andrew,* 86 Va. 273, 9 S. E. 1015; *N. & W. Ry. Co.* v. *Gilman,* 88 Va. 239, 13 S. E. 475.

"It is argued that, as the deceased knew he was approaching a railroad crossing, it was his duty to keep a lookout for trains, and to proceed in such manner that he could avoid a collision if a train appeared; that he had no right to go so near the track that he could not stop before reaching it, until he had satisfied himself that there was no danger.

"It is true that he was bound to use reasonable care to avoid getting into a position in which he could not escape a collision. But the fact that he did get into such position is not conclusive evidence that he was there by his own negligence. He may have been there in consequence of the defendants' negligence, and because he was misled by it. Whether he used due care to ascertain if a train was approaching depended upon inferences from facts to be found by the jury. The manner in which he approached the track; the speed at which he was traveling; the obstructions to a view of the track on which the engine was approaching; the negligence of the defendants, as it affected the conduct of the deceased, whether that negligence consisted in the silence of the electric gong, the failure to ring the bell, sound the whistle, or give any warning of its approach, or in all combined, were among the facts to be found by the jury, and from which facts in connection with all the other circumstances and facts of the case the main fact of due care or negligence on the part of the deceased was to be found."

The court, in that case, declined to hold that all reasonable men would necessarily reach the conclusion upon the facts and circumstances of the case, that the plaintiff's intestate was guilty of contributory negligence and refused to disturb the verdict of the jury.

In the case of *Southern Ry. Co.* v. *Aldridge*, 101 Va. 142, 43 S. E. 333, it appeared from the record that the train which caused the accident approached the crossing at a speed prohibited by the ordinance of the city, and at which, if there had been no ordinance upon the subject, would have warranted the jury in fixing negligence upon the railroad company; that it gave no notice of its approach in any way; that its headlight was extinguished; and that its watchman, who was placed at the crossing to give warning of approaching trains, failed in the performance of his duty. Judge Keith, speaking for the court, after stating that the evidence established the negligence of the plaintiff in error, on page 149 of 101 Va., on page 335 of 43 S. E., says: "Do the facts so plainly disclose the negligence of Aldridge as that reasonable men should not differ in their judgment upon it? He was passing along a much-frequented street. He was approaching a crossing where, under the ordinance of the city, there should have been a watchman to warn him of his danger. There was no train due at the time, and it was all the more incumbent upon the railroad company to herald the approach of a train not running upon its scheduled time. It is true that if he had stopped or paused the accident might not have occurred, but we do not feel warranted in saying that, as matter of law, his failure to stop made a case of contributory negligence so plain as to justify the court in withdrawing it from the consideration of the jury." Citing *Kimball & Fink* v. *Friend, supra,* and *Marshall's Adm'r* v. *Railroad*, 99 Va. 798, 34 S. E. 455.

[6] In *Perkins* v. *Director General*, 133 Va. 242, 112 S. E. 840, Kelly, P., speaking for the court, says: "She (the plaintiff) did not have the right, of course, to go blindly on the track, or to depend entirely on the gong at the crossing, or on signals from the bell and whistle which it was the duty of the defendant's employees to give, or on the slow rate of speed at which the train would have been running if it had obeyed the ordinance. But that the gong might be expected to ring, that it was the duty of the defendant to give warning at the crossing, and that the train ought to have observed a speed of six miles an hour, were circumstances for a jury to consider as bearing very materially upon the question of the care and caution encumbent upon and exercised by her at the time." Judge Kelly then quotes with approval the following language from the *Friend Case, supra:* "The erection of gates, gongs, or other devices at highway or street crossings to warn travelers of approaching trains does not excuse a traveler at such crossings from exercising ordinary care and caution. And while courts and text writers differ as to the degree of reliance that may be placed upon the invitation which an open gate or silent gong gives to the traveler to cross, they generally, if not universally, hold that the same degree of care and caution is not required of him as if there was no such invitation. * * * The question of negligence in such a case is peculiarly one for the consideration of the jury." The judge then adds: "The rule as to a silent gong stated in the foregoing quotation applies equally well to the conduct of a traveler at a crossing where reduced speed and timely warnings are reasonably to be expected."

In *Virginia Railway & Power Co.* v. *Oliver*, 133 Va. 342, 112 S. E. 841, the court, speaking through Kelly, P., held, that the driver of a horse and wagon approach-

ing a street car track can assume that the street car will run at a lawful rate of speed and is not contributorily negligent in going upon the track after once looking and seeing no car approaching near enough to prevent his crossing the track in safety, if the car was not exceeding the speed limit, and that the driver of the horse and wagon, under the evidence, was not contributorily negligent as a matter of law in driving upon the track without looking a second time, as a result of which he was struck by a car running at. an excessive speed which gave no warning.

In *Virginia Railway & Power Co.* v. *Wellons,* 133 Va. 350, 112 S. E. 843, it was held that the contributory negligence of an automobile driver injured by a street car is usually a matter to be determined by the jury, and that evidence that an automobile driver, when he started to cross a street car track within the block, saw a street car approaching at such distance that it could not reach him, if traveling at a lawful rate of speed, before he crossed the track, and that he was almost across when struck by the car, which ran 210 feet before it was stopped, does not show contributory negligence as a matter of law.

It is insisted that this case is controlled by *Washington & Old Dom. Ry. Co.* v. *Zell,* 118 Va. 755, 88 S. E. 309, and that under the doctrine laid down in that case the plaintiff is guilty of contributory negligence as a matter of law and cannot recover. The doctrine announced in that case that a traveler before going upon a railroad crossing must look and listen for approaching trains, except under certain circumstances, is settled law in this jurisdiction. The case in judgment and the *Zell Case* are unlike in their facts. In the *Zell Case* the crossing was simply a public road crossing instead of a much traveled street as in the instant case, and there

was no silent gong to mislead the driver of the automobile; nor was the train, so far as the record shows, running at an unusual speed. Besides, all that is there said about drivers of automobiles being held to a higher degree of caution at crossings than drivers of wagons and other vehicles drawn by horses, and the duty of both to look and listen for approaching trains before attempting to cross, has reference to the general rule in such cases. On page 763 of 118 Va., on page 311 of 88 S. E., it is said: "There are cases in which the question as to whether the traveler was guilty of negligence in going on the track without looking and listening is one for the jury. This class of cases is discussed and the distinction applicable here indicated by Judge Buchanan in *Boyd* v. *Southern Ry. Co.*, 115 Va. 11, 78 S. E. 548."

[7] In *Southern Ry. Co.* v. *Bryant*, 95 Va. 212, 28 S. E. 183, the court, speaking through Judge Riely, after stating the general rule, that a person about to cross a railroad track is required to look and listen, and, if warned by his faculties of the near approach of a train, to keep off of the track until it has passed, or no recovery can be had for injuries sustained by him, at page 219 of 95 Va., at page 185 of 28 S. E., says: "But while this is the general rule, it is not inflexible, nor wholly without exception. It would be unreasonable to require a traveler, upon approaching a railroad crossing over a highway to look, when, by reason of the nature of the ground or other obstructions, he could not see; in other words, when compliance with the general rule would be impracticable or unavailing. Where the view of the track is obstructed, and the railroad company has failed to give notice of the approach of its train to a crossing upon the highway, and a person in attempting to go across the track, not being able to see the train

on account of obstructions, and being obliged to act upon his judgment at the time of crossing, is injured, the propriety of his going upon the track under· such circumstances is not a question of law to be decided by the court, but a matter of fact to be .determined by the jury. 2 Wood on Railroads, p. 1527; Beach on Con. Neg. (2d ed.), sec. 196; *Norfolk & W. R. Co.* v. *Burge*, 84 Va. 68, 4 S. E. 21; *Smedis* v. *Brooklyn, etc., R. Co.*, 88 N. Y. 13; and *Ormsbee* v. *Boston, etc., R. Co.*, 14 R. I. 102."

· [8] At page 221 of 95 Va., at page 186 of 28 S. E., Judge Riely also says: " 'One cannot fail to call to mind that contributory negligence is as distinctly a wrong in the plaintiff as negligence is in the defendant, and that it is as much against the principles of the law to presume it on the one side as on the other; resulting, therefore, in the conclusion, that the defendant can no more avail himself of the one than can the plaintiff of the other.' Bishop on Non-Contract Law, sec. 470."

[9-11] It does not appear from the record that Chapman knew the schedule of train No. 13 on that day, or had any reason to expect the train at that hour. The evidence shows that he slowed up his truck as he approached the crossing, and there is no evidence that he did not look and listen. The inference most favorable to the demurree must be drawn from the fact that he reduced the speed of his truck at this point. Self-preservation and the duty to protect the children in his care negative the suggestion of negligence and strengthen the presumption that he was exercising ordinary care. His view of the track was obstructed until he passed the west line of the warehouse, and the law did not require him to look when by reason of the obstruction he could not see. When he reached the point where he could see, no train was in sight. On account of the high wind

blowing the noise of the train away from the 'pike and the noise of the nearby mill, he could not hear the train. By listening he could ascertain that the gong on the west side of the track was not sounding, and he had a right to infer, and doubtless did infer, that there was no train on the track north or south of the gong terminals which were 1,000 feet from the crossing.

He proceeded to cross the tracks and when the front of the truck reached a point eighteen and one-half feet from the east rail of the main line track and fifteen and one-half feet from the overhang of the passing engine No. 13 for the first time came in view around the curve and from behind a box car. He did not know that No. 13 was running twice as fast as it usually ran over this crossing. Being misled by the defendant's negligence in failing to blow the whistle, ring the bell, or sound the gong, into this place of sudden peril, what course would ordinary care dictate he should pursue? His truck was heavily loaded and still moving—just how fast and whether Chapman was pressing forward or trying to bring the truck to a standstill when struck, the evidence does not disclose. The speed of the train was forty miles per hour, or 58.6 feet every second, and the truck was struck about the center. Forty-three and a half feet forward will make him safe. Must he, assuming the train is coming at its usual speed, speed up his truck and attempt to clear the crossing, or attempt to apply the brakes, not knowing for sure that they will respond sufficiently quickly to save him from the danger zone? In such an emergency, with only four and one-half seconds at his disposal, even if he acted unwisely, it was not negligence in law, since in case of sudden and unexpected danger, necessitating immediate decision as to which of two or more ways of escape will be resorted to, the law makes allowance for

errors of judgment, even though it appears that a resulting accident could have been avoided if the party so placed in peril had pursued a different course. *Harrison* v. *Director General of Railroads*, 86 W. Va. 271, 103 S. E. 355.

[12] Upon the facts and circumstances surrounding the case, it cannot be said that fairminded men might not differ in their conclusions, and we cannot say *as a matter of law* that the plaintiff's intestate was guilty of contributory negligence. His negligence was a question for the jury, and as they might have found for the plaintiff, the court must.

We are of the opinion that this case is controlled by the principles announced in the *Friend Case*, the *Aldridge Case*, the *Oliver Case*, the *Wellons Case*, the *Bryant Case*, *supra*, and other similar cases. To the same effect is *Davis, Director General, etc.*, v. *McCall*, 133 Va. 487, 113 S. E. 835.

The judgment of the circuit court is erroneous and will be reversed, and an order will be entered here overruling the defendant's demurrer to the evidence and entering a final judgment for the plaintiff for the amount of damages ascertained by the jury, with interest thereon from the date of the verdict until paid.

*Reversed and final judgment.*

PRENTIS and BURKS, JJ., dissenting.