## Wytheville

### Richard Morgan, Administrator of Uneese B. Morgan, Deceased, v. Atlantic Coast Line Railroad Company.

June 14, 1923.

1. Crossings—*Automobile Accident—Negligence of Railroad—Case at Bar.*—In the instant case plaintiff's intestate was on her way to school in a truck driven by another. Plaintiff's evidence, if believed, showed that the truck approached on a side street to within about twenty feet of the railroad crossing, and that the stationary gong was silent. The driver slowed down and looked in both directions and listened. The other occupants of the truck also looked in both directions, but none heard or saw the train. The driver then proceeded and as the front wheels of the truck passed over the first rail he saw the train about 200 or 300 feet away, approaching from the west. The train was running from forty to forty-five miles an hour. The driver gave his car more gas and endeavored to get across, but the truck was struck by the train, which did not reduce its speed, and plaintiff's intestate was killed. No warning was given by bell or whistle. The city ordinance made it unlawful for trains to run at a greater rate than six miles per hour in the city, and required warnings at crossings. There was also evidence that the engineer was not keeping a proper lookout and that the fireman although he saw the truck failed to notify the engineer in time. The evidence for the defendant contradicted the evidence for the plaintiff in some respects.

   *Held:* That defendant's negligence was a question for the jury, and that upon the evidence they were warranted in finding that defendant's negligence was the efficient and proximate cause of the injury complained of.

2. Crossings—*Violation of Speed Limit—Case at Bar.*—In the instant case the driver of a truck struck by a railroad train had a right to assume that the defendant railroad would not operate its train in excess of six miles an hour, in violation of the city ordinance. Had the train not exceeded that limit, the driver, after seeing the train a block and a half away as he crossed the first rail, could have cleared the track before the train arrived.

   *Held:* That the railroad was liable.

3. CROSSINGS—*Speed of Train—Violation of Ordinance or Statute.*—While the mere speed of a train is not *per se* negligence, its unlawful rate of speed at a grade crossing, if the sole proximate cause of an injury, will support a cause of action therefor.

4. CROSSINGS—*Contributory Negligence of Passenger—Driver of Automobile—Imputable Negligence—Case at Bar.*—In the instant case plaintiff's intestate was killed in an automobile accident at a street crossing. The driver of the automobile was an experienced chauffeur who had never had an accident. He slowed the automobile down as he approached the crossing and looked and listened. Plaintiff's intestate also looked and listened, and as she was a passenger on the truck and had no authority to exercise control over the driver, his negligence, if any, could not be imputed to her. Plaintiff's intestate had the right to assume that the defendant railroad would not operate its train at a rate of speed in excess of that allowed by the ordinance of the city. Had defendant obeyed the law in this particular, the automobile would have cleared the track in safety.

   *Held:* That the negligence of plaintiff's intestate was for the jury.

5. CROSSINGS—*Accident to Automobile at Crossing—Speed of Train—Evidence.*—In the instant case, an action for death of plaintiff's intestate in an automobile accident at a street crossing, the evidence of the other occupants of the automobile that the train was running forty-five miles an hour at the time of the accident was admissible.


Error to a judgment of the Hustings Court of the city of Petersburg, in an action of trespass on the case. Judgment for defendant. Plaintiff assigns error.

*Reversed and final judgment.*

The opinion states the case.

*D. C. O'Flaherty* and *M. J. Fulton*, for the plaintiff in error.

*Mann & Townsend* and *Wm. B. McIlwaine*, for the defendant in error.

WEST, J., delivered the opinion of the court.

Uneese B. Morgan was instantly killed in a collision between an automobile and a train of the Atlantic Coast Line Railroad Company. In an action against the company the jury returned a verdict for $3,000.00 in favor of the plaintiff. On motion of the defendant, the trial court set the verdict aside and, under section 6251 of the Code, entered final judgment for the railroad company.

The plaintiff assigns error.

[1] The accident occurred May 5, 1920, at the Jones street crossing, in the city of Petersburg. The plaintiff's intestate, Uneese B. Morgan, and Dorothy Dodson were on their way to school in a Ford truck driven by Charley Tucker. The truck was about fourteen feet long, with a seat on the front covered by a top without curtains. When the two girls got in the truck, Joseph Booker got out of the seat and stood on the right running board. Dorothy Dodson sat next to the driver, while Uneese B. Morgan sat on her right. The truck was going south while the train was coming from the west.

The evidence favorable to the plaintiff, if believed, shows these facts: When the truck approached in about ten steps (about twenty feet) of the railroad, the stationary gong was silent. Tucker slowed down and stood up and leaned forward over the steering wheel and listened and looked both east and west, but neither saw nor heard any train from either direction. Uneese B. Morgan, Dorothy Dodson and Joseph Booker, the other occupants of the truck, also looked both east and west and neither of them saw or heard a train from either direction. Tucker then proceeded and as the front wheels of the truck passed over the first rail of the track he saw the train about one and a half city blocks away (200 to 300 feet), approaching from the west. The train was running from forty to forty-five miles per hour. He

gave his car more gas and endeavored to get entirely across the track, but before his truck could clear, the train, without reducing its speed, struck the rear end of the truck, knocked it down the embankment, killed the plaintiff's intestate and ran about twenty rail lengths before the engineer could stop it.   The company gave no warning of the approach of the train by bell or whistle, or otherwise.   The ordinances of the city of Petersburg made it unlawful for any engine to be propelled upon any railroad in the city at a greater rate of speed than six miles per hour, and required that the bell on every locomotive crossing the streets of the city, and when approaching within fifty yards of any street, be kept constantly ringing.   Had the train been running only six miles per hour, it could have been stopped within twenty feet.

The evidence for the defendant tends to prove that the stationary bell was ringing as the train approached, that the train bell and whistle were sounded in strict accordance with the ordinance of the city and law of the State, that the occupants of the car, when forty feet from the rail, could have seen the train, if in view, 500 feet coming from the west; that the plaintiff was guilty of contributory negligence; that the plaintiff's intestate failed to notify the driver of the approach of the train; and that the train was running only about eighteen to twenty miles per hour.

[2] The driver of the truck had a right to assume the company would not operate its train in excess of six miles an hour, in violation of the city ordinance.   Had the train not exceeded that limit, the driver, after seeing the train a block and a half away as he crossed the north rail, could have cleared the track before the train arrived.

[3] While the mere speed of a train is not *per se* negli-

gence, its unlawful rate of speed at a grade crossing, if the sole proximate cause of an injury, will support a cause of action therefor.

In *Norfolk & P. T. Co.* v. *Forrest*, 109 Va. 663, 64 S. E. 1036, Harrison, J., speaking for the court, said: "The evidence of the plaintiff tends to show that the excessive speed of the car and the failure to give proper signals of its approach to the crossing were, one or both together, the proximate cause of the accident. The plaintiff's intestate, in determining the prudence of his course, had a right to rely upon the assumption that the law would be obeyed, both in respect to the speed of the car at the crossing and the sounding of the gong as it approached. If the failure to sound the gong induced the belief that the car would stop or slacken its speed and thereby led the deceased to enter a place made dangerous by a failure to slacken such speed, in obedience to the ordinance, then the failure to do these things was the proximate cause of the accident."

The evidence also tends to show that the engineer was not keeping a proper lookout and that the fireman saw the truck but did not notify the engineer until the train was about to collide with it.

In *C. & O. Ry. Co.* v. *Gayle*, 132 Va. 435, 112 S. E. 785, Prentis J., speaking for the court, said: "For the company it is claimed that the headlight on the engine was a very strong one; that the statutory signals were sounded in strict accordance with the law; that a stationary crossing bell was ringing as the train approached; that it cannot be held liable because entirely free from negligence; and that the collision was solely due to the gross negligence of the driver of the automobile. On the other hand, the evidence for the plaintiff tends to prove that the signals required by law were not sounded; that the driver of the machine was lulled into

a sense of security because the stationary warning bell was not ringing, and that he did not discover the approaching train until the danger was imminent and the injury unavoidable. This being the state of the evidence, the question is clearly one of fact for the determination of the jury, and their finding is conclusive unless there was some harmful error committed during the trial."

It is clear that the defendant's negligence in the instant case was a question for the jury, and upon the evidence they were warranted in finding that the defendant's negligence was the efficient and proximate cause of the injury complained of.

The defendant insists that the plaintiff's intestate was guilty of such negligence that there can be no recovery.

[4] Tucker, the driver of the truck, was an experienced chauffeur and had never had an accident. He slowed the truck down as he approached the crossing and looked and listened. Uneese B. Morgan, the plaintiff's intestate, also looked and listened for a train as the truck neared the crossing. She was a passenger on the truck and had no authority to exercise control over the driver. Without such authority his negligence, if any, could not be imputed to her. *Va. R. & P. Co.* v. *Gorsuch,* 120 Va. 655, 658-9, 91 S. E. 632, Ann. Cas. 1918 B, 838. She, too, had the right to assume that the company would not operate its train at a rate of speed in excess of that allowed by the ordinance of the city. Had the company obeyed the law in this particular, the truck would have cleared the track in safety.

The negligence of the plaintiff's intestate was likewise a question for the jury, and upon the evidence their finding is conclusive. It cannot be said, as a matter of law, under the evidence, that she was guilty of negligence which caused or contributed to her injury.

The defendant relies, with much confidence, upon the following cases: *Washington & O. D. Ry.* v. *Zell's Adm'r*, 118 Va. 755, 88 S. E. 309; *Southern Ry. Co.* v. *Jones*, 118 Va. 685, 88 S. E. 178; *Brammer's Adm'r* v. *N. & W. Ry. Co.*, 104 Va. 50, 51 S. E. 211. We do not think these are controlling. In the *Zell Case*, as was said in *Chapman* v. *Hines*, 134 Va. 274, 115 S. E. 373, "the crossing was simply a public road instead of a much traveled street, as in the instant case, and there was no silent gong to mislead the driver of the automobile, nor was the train, so far as the records show, running at an unusual speed * * * and all that is there said * * * about the duty to look and listen for approaching trains before attempting to cross has reference to the general rule in such cases." Besides, neither of the occupants of the car looked or listened at all.

In the *Jones Case*, the occupants of the automobile neither looked nor listened, nor took any precaution for their own safety. This was also true in the *Brammer Case*.

The instant case is rather controlled by *Perkins* v. *Director General of Railroads*, 133 Va. 242, 112 S. E. 839; *C. & O. Ry. Co.* v. *Gayle, supra; Virginia Ry. & P. Co.* v. *Oliver*, 133 Va. 342, 112 S. E. 841; *Chapman's Adm'r* v. *Hines*, 134 Va. 274, 115 S. E. 373, and cases cited therein.

[5] The defendant also relies on cross-assignments of error based on the action of the court in permitting the plaintiff's witnesses, Tucker, Booker and Dodson, to testify that the train was running forty-five miles an hour, and the granting of instructions Nos. 1, 2, 5 and 12.

No authority has been cited to show that the testimony of these witnesses was not admissible as evidence

in the case, and we know of none.    This assignment is without merit.

The court gave sixteen instructions covering the law on every phase of the case.    A careful examination of them convinces us that the jury was fairly and fully instructed, and that the instructions contained no error which was prejudicial to the defendant.

There was ample evidence to support the verdict of the jury and the court erred in setting it aside and entering judgment for the defendant.

The judgment will be reversed and set aside, and judgment entered here for the plaintiff upon the verdict of the jury.

*Reversed and final judgment.*